603 So.2d 1275 (1992)
Jeremy Lynn SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 75036.
Supreme Court of Florida.
August 27, 1992.
James Marion Moorman, Public Defender and Paul C. Helm, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Jeremy Lynn Scott appeals his convictions of first-degree murder and robbery and his sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
On November 1, 1988, the body of Donald Moorehead was discovered in his trailer in Lakeland. His skull was fractured, and he had been strangled by a telephone cord. Moorehead's car was missing. A note had been placed on the trailer door indicating that Moorehead had gone to Orlando and would be back in a few days.
*1276 Bryan Hall was the key witness at Jeremy Scott's trial. Hall testified that he met Scott around 3 a.m. the morning of the murder and they decided to go to Moorehead's trailer because Moorehead owed Scott money for some painting he had done. Moorehead was a friend of Scott's. They called Moorehead and he picked them up and brought them back to his trailer.
The three men sat in Moorehead's living room for about an hour, drinking beer, smoking marijuana, and talking. Scott then went to bed in a back bedroom. Moorehead later went to the back of the trailer, and Hall believed that Moorehead, a homosexual, was making sexual advances toward Scott at this time. Moorehead also attempted to talk Hall into having sex, but Hall refused. Moorehead eventually fell asleep in a chair in the living room, while Hall slept on the couch.
Scott woke Hall around 5 a.m. and the two looked through the trailer for money while Moorehead slept in the chair. Scott said he knew Moorehead had withdrawn some money from the bank. When their search proved unsuccessful, they decided to take Moorehead's car.
Scott told Hall that they needed to kill Moorehead to prevent him from turning them in. Hall picked up a hammer in the kitchen, and Scott unsuccessfully attempted to persuade Hall to hit Moorehead with it. Scott then got a grape juice bottle from the refrigerator and said they would both hit Moorehead. Scott hit Moorehead in the head with the bottle, and Moorehead slid out of the chair to the floor. Scott handed the bottle to Hall and told him to hit Moorehead. Hall complied.
While Hall and Scott resumed their search for money, Moorehead continued to make choking sounds, so Scott strangled him with the phone cord. After finding some change in the bedroom, Scott wiped off the bottle with a towel and put the bottle in the refrigerator. Hall wrote the note and put it on the back door at Scott's direction. The two then left the trailer in Moorehead's car and picked up Scott's girlfriend, Jami Allen. They told Allen that Moorehead molested a boy so they beat him up and took his car.
After Scott and Hall were apprehended, Scott made several statements to the police. He admitted participating in the killing, but told several different stories regarding the specific circumstances of Moorehead's death and the motive for the killing.[1] Scott contended that he used the phone cord to turn Moorehead over to check his pulse and to carry him to the couch.
Scott was found guilty of first-degree murder and robbery with a deadly weapon. The jury recommended a sentence of life imprisonment. The trial judge overrode the jury's recommendation. The judge found five aggravating factors[2] and one statutory mitigating factor, Scott's age at the time of the crime (nineteen).[3] He also "reviewed and considered" nonstatutory mitigation and concluded that it did not outweigh the aggravating circumstances.
Scott raises only one issue as to the guilt phase of trial, arguing that the prosecutor made several improper comments during closing argument which necessitate a new trial. After carefully reviewing the prosecutor's argument, as well as the record as a whole, we conclude that the complained-of comments were not so prejudicial or inflammatory as to violate Scott's right to a fair trial, nor were they of such a nature as to influence the jury to return a more severe verdict than otherwise warranted. While some of these remarks were improper, they were not so offensive that a mistrial was required. See Wasko v. State, *1277 505 So.2d 1314, 1317 (Fla. 1987); Jennings v. State, 453 So.2d 1109, 1113-14 (Fla. 1984), vacated on other grounds, 470 U.S. 1002, 105 S.Ct. 1351, 84 L.Ed.2d 374 (1985); State v. Murray, 443 So.2d 955, 956 (Fla. 1984).
We turn now to the penalty phase of trial. Scott's first argument is that the trial court erred in overriding the jury's recommendation of life imprisonment. In order to sustain a sentence of death following a jury recommendation of life, "the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). This standard has been consistently interpreted by this Court to mean that "when there is a reasonable basis in the record to support a jury's recommendation of life, an override is improper." Ferry v. State, 507 So.2d 1373, 1376 (Fla. 1987).
One statutory mitigating factor is present in this case, Scott's young age at the time of the crime. In addition, the following nonstatutory mitigation was presented at trial through the testimony of lay and expert witnesses: (1) Scott had a difficult childhood  he was essentially abandoned by his mother as an infant and was tossed back and forth from one relative to another  one witness characterized him as a "throw-away kid;" Scott's mother and uncle physically abused him as a child; (2) Scott is mentally impaired  he suffers from adjustment disorder and attention deficit disorder; he has brain damage; he has borderline intelligence and can barely read; (3) Scott suffers from long-term drug and alcohol abuse; (4) Scott is emotionally unstable and immature  he seeks attention through tantrums and through self-destructive behavior such as cutting his arms; he is very impulsive, acting without regard to consequences; and (5) Scott has the capacity to form loving relationships  he cares about his girlfriend and their son, his grandparents, and his aunt.[4]
While some persons may disagree with the weight of this evidence, or may even disbelieve portions of it altogether, clearly other reasonable persons would be convinced by it. We find that the mitigating evidence presented by Scott in this case does provide a reasonable basis to support the jury's life recommendation, and the trial court's decision to override the jury's recommendation was therefore improper.
Given our resolution of this issue, it is unnecessary for us to address Scott's remaining claims.[5] However, we do note that the law is clear that aggravating factors must be established beyond a reasonable doubt. Thus, the trial judge's application of the lesser standard of clear and convincing evidence makes the sentencing order in this case fatally defective. See Carter v. State, 560 So.2d 1166, 1169 n. * (Fla. 1990). We caution trial judges to carefully apply the proper standard in rendering their sentencing decisions.
Accordingly, we affirm Scott's conviction for first-degree murder but reduce his death sentence to life imprisonment without eligibility for parole for twenty-five years from the date of the sentence, less any jail time served.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Scott contended at various times that he and Hall hit Moorehead because they caught him molesting a young boy, because Moorehead made unwanted sexual advances toward them, or because they simply wanted to teach Moorehead a lesson because he was a homosexual.
[2] (1) The murder was committed during a robbery; (2) the murder was especially heinous, atrocious, or cruel; (3) the murder was cold, calculated, and premeditated; (4) Scott had previously been convicted of two violent felonies; and (5) the murder was committed for the purpose of avoiding or preventing a lawful arrest. § 921.141(5), Fla. Stat. (1987).
[3] § 921.141(6)(g), Fla. Stat. (1987).
[4] We also note that Scott's accomplice, Bryan Hall, received a life sentence for his participation in the murder. While the disparate treatment of equally culpable accomplices can serve as a valid basis for a jury's recommendation of life imprisonment, the evidence presented at trial indicates that Hall and Scott were not equally culpable.
[5] Scott argues that: (1) the court erred by applying a clear and convincing evidence standard in finding aggravating circumstances; (2) the court erred in finding the murder to be heinous, atrocious, or cruel; (3) the court erred in finding the murder to be cold, calculated, and premeditated; (4) the court erred in finding the murder was committed to avoid arrest; and (5) the court failed to properly consider mitigating evidence.