643 So.2d 1032 (1994)
Robert Lacy PARKER, Appellant,
v.
STATE of Florida, Appellee.
No. 63700.
Supreme Court of Florida.
August 11, 1994.
Rehearing Denied October 14, 1994.
Jonathan C. Koch and Lora J. Smeltzly, of Holland & Knight, Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.

ON REMAND
PER CURIAM.
We have for review the sentence of death imposed on Appellant Robert Lacy Parker. This Court affirmed Parker's convictions and death sentence on direct appeal. Parker v. State, 458 So.2d 750 (Fla. 1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 *1033 (1985).[1] However, in federal habeas corpus proceedings, the United States Supreme Court held that Parker was denied meaningful review in his direct appeal to this Court. Parker v. Dugger, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). The United States Supreme Court remanded the case, directing lower federal courts to order the State of Florida to initiate appropriate proceedings for state courts to reconsider Parker's death sentence. 498 U.S. at 322-23, 111 S.Ct. at 740-41, see Parker v. Singletary, 939 F.2d 907 (11th Cir.1991). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Having reviewed the entire record in this case in light of the United States Supreme Court's decision and the jury's recommendation for a life sentence, we vacate the sentence of death and remand for imposition of a sentence of life imprisonment without eligibility for parole for twenty-five years. Consistent with the trial judge's order at Parker's original sentencing, the sentence shall be served consecutive to the other sentences previously imposed in this case.
The facts were fully set forth in this Court's opinion on direct appeal and by the United States Supreme Court. Briefly, Parker and three codefendants, Tommy Groover, Elaine Parker, and William Long, set out on February 6, 1982, to recover money owed them for the delivery of illegal drugs. Their efforts resulted in the deaths of Richard Padgett, Jody Dalton, and Nancy Sheppard. Elaine Parker and William Long negotiated pleas to second-degree murder charges. Tommy Groover was tried separately and convicted of three counts of first-degree murder, receiving death sentences for the Padgett and Dalton murders, and a life sentence for Sheppard's murder.[2] Another codefendant, Joan Bennett, was originally charged with the first-degree murder of Dalton but pled guilty to the reduced charge of accessory after the fact to first-degree murder.
A jury convicted Robert Lacy Parker of first-degree murder for the deaths of Padgett and Sheppard, and of third-degree murder for the death of Dalton, and recommended life sentences on both capital murder convictions. In his sentencing order, the trial judge found five aggravating circumstances in the Padgett murder and six in the Sheppard murder.[3] The judge expressly analyzed the statutory mitigating circumstances, but he was silent as to nonstatutory mitigation, saying that "this Court has carefully studied and considered all the evidence and testimony at trial and at advisory sentence proceedings, the Presentence Investigation Report, the applicable Florida Statutes, the case law, and all other factors touching upon this case." The judge concluded that "[t]here are no mitigating circumstances that outweigh the aggravating circumstances in the first count (Padgett murder) and the second count (Sheppard murder)." Without further explanation, the judge followed the jury's life recommendation as to the Padgett murder but overrode it as to the Sheppard murder.
In our review on direct appeal, we did not discuss any mitigating evidence. We summarized the trial court's findings by saying that "[t]he trial court found no mitigating circumstances to balance against the aggravating factors." Parker, 458 So.2d at 754. Based on those findings, and after setting aside two aggravating circumstances that *1034 had been erroneously found,[4] we concluded that the override satisfied the well-established standard of Tedder v. State, 322 So.2d 908 (Fla. 1975), in which we held that "to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Id. at 910.
The United States Supreme Court found this Court's appellate review of the penalty to be constitutionally deficient. The Court held that the Florida Supreme Court both mischaracterized the trial judge's findings to erroneously mean that no nonstatutory mitigating circumstances had been proved, and then ignored the nonstatutory mitigating circumstances that had been established at trial. Parker v. Dugger, 498 U.S. at 320, 111 S.Ct. at 739. Significantly, the United States Supreme Court noted that the nonstatutory mitigating circumstances were of the type we had previously found sufficient in other cases in which we applied Tedder to preclude a jury override and sustain a jury's life recommendation. Id. 498 U.S. at 315, 111 S.Ct. at 736. Under these facts, the United States Supreme Court found that Parker's appeal had been denied in an arbitrary manner. Id. at 322, 111 S.Ct. at 740.
This Court on remand must now reexamine the record and decide, in light of the nonstatutory mitigating circumstances established at trial, whether the facts suggesting a sentence of death were so clear and convincing that virtually no reasonable person could have recommended sentencing Parker to life imprisonment for the Sheppard murder. In other words, we must reverse the override if there is a reasonable basis in the record to support the jury's recommendation of life. E.g., Scott v. State, 603 So.2d 1275, 1277 (Fla. 1992); Ferry v. State, 507 So.2d 1373, 1376 (Fla. 1987).
It is quite clear, as every federal reviewing court found, that substantial, nonstatutory mitigating evidence, most of which was uncontroverted, was presented at Parker's trial. Parker v. Dugger, 498 U.S. at 316, 111 S.Ct. at 736-37. First, the jury was told, and Parker's attorney emphasized in his argument to the jury in the penalty phase, that "none of Parker's accomplices received a death sentence for the Sheppard murder." Id. at 314, 111 S.Ct. at 736. Billy Long admitted to shooting Nancy Sheppard five times in the head and chest, but told jurors he was allowed to plead guilty to second-degree murder. Id. The jury also learned that Tommy Groover got a life sentence for the Sheppard murder, that Elaine Parker negotiated a plea to second-degree murder, and that Joan Bennett pleaded guilty to the reduced charge of accessory after the fact to first-degree murder.
Second, "several witnesses at trial, including witnesses for the State, testified that Parker was under the influence of large amounts of alcohol and various drugs, including LSD, during the murders." Id.
Third, there was no evidence to establish that Parker personally shot Sheppard or the other two victims. Testimony about the extent of Parker's role in the crimes was in conflict, and some evidence suggested that Groover, not Parker, may have been the dominant actor in the murders. For example, testimony indicated that after Long initially shot Sheppard, Groover yelled out to shoot her again and to cut her because she was still breathing. Also, one witness testified that he saw Groover standing over and bloodying Padgett in an argument about money shortly before Padgett was killed, with Parker standing in the background. Although the trial judge concluded that Parker slashed Sheppard's throat after Long shot her, jurors also heard testimony that either Groover or Long may have stabbed her; and in any event, the State's medical examiner testified that the stab wounds were superficial and would not have caused death. Whatever the truth may have been, the jury was entitled to consider the conflicting testimony and weigh it in Parker's favor for purposes of imposing punishment while still finding him guilty of first-degree murder.
Finally, numerous witnesses testified on Parker's behalf in the penalty phase concerning *1035 his background and character. Witnesses said that Parker had a difficult childhood. See id. Parker and his siblings were aware that his alcoholic father beat and abused his mother. The father also fed Parker beer at bars when Parker was less than five years old. Parker has been regularly abusing drugs and alcohol since the age of fourteen. Evidence also indicated that Parker had a positive adult relationship with his two children, whom he helped to raise and care for, and that he had a good relationship with his neighbors, whom he assisted when they were in need.
As the United States Supreme Court correctly observed, many of these mitigating factors have been found sufficient in other cases to preclude a jury override and sustain a life recommendation. Parker v. Dugger, 498 U.S. at 315, 111 S.Ct. at 736. For example, we have held that a jury is entitled to reasonably rely on the fact that an accomplice was the one who actually killed the victims. See, e.g., Christmas v. State, 632 So.2d 1368, 1371 (Fla. 1994); Malloy v. State, 382 So.2d 1190, 1193 (Fla. 1979). Jurors could have found disparate treatment in that accomplices who were equally or more culpable were not sentenced to death. See, e.g., Jackson v. State, 599 So.2d 103, 110 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 612, 121 L.Ed.2d 546 (1992); Fuente v. State, 549 So.2d 652, 658-59 (Fla. 1989); McCampbell v. State, 421 So.2d 1072, 1076 (Fla. 1982); Malloy v. State, 382 So.2d 1190, 1193 (Fla. 1979). Jurors may reasonably have considered evidence that the defendant was intoxicated the day the murder was committed, see, e.g., Stevens v. State, 613 So.2d 402, 403 (Fla. 1992); Cheshire v. State, 568 So.2d 908, 911 (Fla. 1990); Norris v. State, 429 So.2d 688, 690 (Fla. 1983); Buckrem v. State, 355 So.2d 111, 113-14 (Fla. 1978), or that he suffered from long-term drug or alcohol abuse, see, e.g., Scott v. State, 603 So.2d 1275, 1277 (Fla. 1992). A defendant's capacity to form loving relationships with his family and friends is worthy of a jury's consideration in recommending punishment for capital murder. See, e.g., Scott v. State, 603 So.2d 1275, 1277 (Fla. 1992); Bedford v. State, 589 So.2d 245, 253 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992). A difficult childhood is valid nonstatutory mitigating evidence upon which a jury is entitled to rely. See, e.g., Scott, 603 So.2d at 1277. Jurors also may consider remorse or repentance. See Stevens v. State, 613 So.2d 402, 403 (Fla. 1992).
As we said in Scott, "[w]hile some persons may disagree with the weight of this evidence, or may even disbelieve portions of it altogether, clearly other reasonable persons would be convinced by it." 603 So.2d at 1277. We also note that the jury was apparently quite capable of reasonably sorting out the facts and applying the law in the guilt phase, where it distinguished the Dalton murder from the Padgett and Sheppard murders in handing down their guilty verdicts, all of which were supported by the record. See Parker v. State, 458 So.2d at 754. There is no reason to believe that the same jury was less capable of reasonably applying the aggravating and mitigating circumstances in the penalty phase of the trial.
Thus, we conclude that the override was improper because jurors reasonably could have relied on these nonstatutory factors established in the record to recommend a life sentence under the totality of circumstances in this case.[5]
We also reject the State's claims that Tedder is merely "a declaration of judicial policy relating to the standard of review, not law per se," Brief of Appellee at 17, and that this Court should defer to a trial judge's discretionary decision regarding the weight of mitigating evidence regardless of the jury's recommendation, Brief of Appellee at 22. Although we have made it clear many times before, we wish to leave no doubt that Tedder is indeed the law of this State, law that this Court has applied scores of times since 1975 "and consistently reaffirmed since then." Stevens, 613 So.2d at 403. Moreover, following the State's suggestion would clothe every death sentence with the presumption of correctness, and that "would effectively *1036 result in this state's death penalty being declared unconstitutional." White v. State, 616 So.2d 21, 26 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 214, 126 L.Ed.2d 170 (1993).
For the reasons stated above, the sentence of death is vacated and this cause is remanded for imposition of a sentence of life imprisonment without eligibility for parole for twenty-five years.
It is so ordered.
SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
OVERTON, J., dissents with an opinion, in which GRIMES, C.J. concurs.
OVERTON, Justice, dissenting.
I would not reduce Parker's sentence to life imprisonment. The United States Supreme Court's decision in Parker v. Dugger, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), does not, in my view, mandate this result. That decision only directed that
the State of Florida initiate appropriate proceedings in state court so that Parker's death sentence may be reconsidered in light of the entire record of his trial and sentencing hearing and the trial judge's findings... . We express no opinion as to whether the Florida courts must order a new sentencing hearing.
Id. at 323, 111 S.Ct. at 740. As I construe that directive, this Court has been provided with three alternatives. First, because we previously determined that the trial court erroneously found two aggravating circumstances, we may remand this cause to the trial court for a new sentencing hearing before the trial judge in which the trial judge would reconsider and reweigh the proper aggravating circumstances and the mitigating circumstances that are in this record consistent with the law that has been established in this case. Second, this Court could re-review the penalty phase proceeding and override the jury's decision through a detailed explanation of why the mitigating factors do not justify a life sentence under the principles of Tedder v. State, 322 So.2d 908 (Fla. 1975). Third, we may re-review the penalty phase proceeding and reduce Parker's sentence to life imprisonment.
The facts of this case, as we articulated them in Parker v. State, 458 So.2d 750 (Fla. 1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985), have not changed. As we stated in that opinion, the three murders at issue in this case were all instigated by Robert Lacy Parker, a drug dealer. The facts, as we articulated them in Parker, are as follows:
Parker was charged with first-degree murder in the deaths of Richard Padgett, Jody Dalton and Nancy Sheppard. The state introduced evidence at trial that Parker was a drug dealer and Tommy Groover sold drugs for him. Groover had allegedly fronted some drugs to Padgett. When Groover was unable to pay Parker, Parker allegedly threatened to hang Groover unless the debt was satisfied. Testimony indicated Parker was of a violent temperament, had possession of firearms and was irritated over the drug debt. Uncontroverted evidence showed that Padgett was located at a bar, taken to Parker's junkyard and beaten by Groover and driven into the woods and shot by Groover. Later that same evening, Groover beat and shot Jody Dalton and Parker helped weight her body and sink it in a lake. Finally, Nancy Sheppard, Padgett's seventeen-year-old girlfriend, was lured from her home and taken to the ditch where Padgett's body had been left. She was killed by Billy Long, who testified that he was ordered to kill her by Parker, who threatened to kill him in her place unless Long complied. Parker then took Sheppard's necklace and ring from her body.
Parker did not deny being present during these events, but he testified in his own behalf that he had been an unwilling accomplice, forced into cooperation by Groover's threats against Parker's family. He further claimed to have had no indication that Groover planned to kill Padgett or Dalton and that these murders were not part of any common scheme or in furtherance of any common goal. On the contrary, Parker claimed friendship with Padgett and disclaimed more than the slightest acquaintance with either of the women.

*1037 The jury convicted Parker of third-degree murder in the death of Jody Dalton and first-degree murder in the Padgett and Sheppard homicides. The jury recommended life imprisonment on both first-degree convictions. The trial judge sentenced Parker to life in the Padgett killing, but he imposed the death penalty for the Sheppard murder.
Id. at 751-52.
I am and always have been a firm supporter of the principles set forth in Tedder. Nevertheless, I find that the facts in this case so clearly and convincingly support a sentence of death that virtually no reasonable person could differ as to that conclusion. Parker was the instigator of the three murders in this case. The victim of the murder for which he received the death penalty was killed only because she was one of the other victim's girlfriends. The killings were instigated by Parker to assure fiscal control over his drug dealers. The people who actually killed the victims and received lesser sentences, in effect, worked for Parker and killed the victims at Parker's behest. Given the circumstances in this case, the lesser sentences imposed on those individuals do not, in my opinion, constitute a mitigating factor. If the death penalty is to mean anything at all, it should apply to these types of drug-controlled killings.
GRIMES, C.J., concurs.
NOTES
[1] This Court has also denied Parker's various requests for postconviction relief. See Parker v. State, 491 So.2d 532 (Fla. 1986) (affirming denial of motion under Florida Rule of Criminal Procedure 3.850); Parker v. State, Nos. 63,700, 78,700, 74,978 (Fla. Feb. 7, 1992) (unpublished order denying pro se petition for extraordinary relief); see also Parker v. Olliff, 587 So.2d 1328 (Fla. 1991) (Fla. 1991) (table) (denying petitions for writs of prohibition and certiorari).
[2] See Groover v. State, 458 So.2d 226 (Fla. 1984), cert. denied, 471 U.S. 1009, 105 S.Ct. 1877, 85 L.Ed.2d 169 (1985).
[3] The trial judge found as to both murders the aggravating circumstances that Parker had been previously convicted of another violent felony, § 921.141(5)(b), Fla. Stat. (1981); the murder was committed during a robbery, id. § 921.141(5)(d); the murder was committed for pecuniary gain, id. § 921.141(5)(f); the murder was especially heinous, atrocious, or cruel, id. § 921.141(5)(h); and the murder was cold, calculated, and premeditated, id. § 921.141(5)(i). The judge also found that Sheppard was murdered to avoid lawful arrest, id. § 921.141(5)(e). See Parker v. State, 458 So.2d at 754.
[4] We rejected the trial judge's findings that Sheppard's murder was committed during a robbery, and that it was especially heinous, atrocious, or cruel. See Parker v. State, 458 So.2d at 754.
[5] Because we decide the case on this basis, we need not address Parker's claim that the death penalty as applied here is disproportional and unusual punishment.