458 So.2d 750 (1984)
Robert Lacey PARKER, Appellant,
v.
STATE of Florida, Appellee.
No. 63700
Supreme Court of Florida.
September 6, 1984.
Rehearing Denied December 3, 1984.
*751 Robert J. Link of Goodstein & Link, Jacksonville, for appellant.
Jim Smith, Atty. Gen. and Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellee.
PER CURIAM.
Appellant was tried on three counts of first-degree murder. A jury found him guilty of first-degree murder on two counts and of third-degree murder on the other and recommended a sentence of life on each of the first-degree murder convictions. The trial judge overrode the jury recommendation on one of the convictions and imposed the death penalty. We have jurisdiction to review the convictions and the imposition of the death penalty pursuant to article V, section 3(b)(1), Florida Constitution. We affirm both the convictions and the sentence.
Parker was charged with first-degree murder in the deaths of Richard Padgett, Jody Dalton and Nancy Sheppard. The state introduced evidence at trial that Parker was a drug dealer and Tommy Groover *752 sold drugs for him. Groover had allegedly fronted some drugs to Padgett. When Groover was unable to pay Parker, Parker allegedly threatened to hang Groover unless the debt was satisfied. Testimony indicated Parker was of a violent temperament, had possession of firearms and was irritated over the drug debt. Uncontroverted evidence showed that Padgett was located at a bar, taken to Parker's junkyard and beaten by Groover and driven into the woods and shot by Groover. Later that same evening, Groover beat and shot Jody Dalton and Parker helped weight her body and sink it in a lake. Finally, Nancy Sheppard, Padgett's seventeen-year-old girlfriend, was lured from her home and taken to the ditch where Padgett's body had been left. She was killed by Billy Long, who testified that he was ordered to kill her by Parker, who threatened to kill him in her place unless Long complied. Parker then took Sheppard's necklace and ring from her body.
Parker did not deny being present during these events, but he testified in his own behalf that he had been an unwilling accomplice, forced into cooperation by Groover's threats against Parker's family. He further claimed to have had no indication that Groover planned to kill Padgett or Dalton and that these murders were not part of any common scheme or in furtherance of any common goal. On the contrary, Parker claimed friendship with Padgett and disclaimed more than the slightest acquaintance with either of the women.
The jury convicted Parker of third-degree murder in the death of Jody Dalton and first-degree murder in the Padgett and Sheppard homicides. The jury recommended life imprisonment on both first-degree convictions. The trial judge sentenced Parker to life in the Padgett killing, but he imposed the death penalty for the Sheppard murder.
Appellant raises twenty issues as assignments of error in the guilt phase. All have been considered in depth and found insufficient to require reversal. We find it necessary to discuss only three at any length.
First, Parker contends that the Padgett murder was an independent act of Tommy Groover's, and the trial court erred in denying Parker's request for a jury instruction on the independent act of a co-felon, citing Bryant v. State, 412 So.2d 347 (Fla. 1982). It is true that an act in which a defendant does not participate and which is "outside of and foreign to, the common design" of the original felonious collaboration may not be used to implicate the nonparticipant in the act. 412 So.2d at 349. Where any evidence which would support the theory of independent act has been presented, the defendant is entitled to the jury instruction. We do not find any evidence on the record which would require the instruction.
In Bryant, the defendant had agreed to help burgle a supposedly empty apartment. Upon entering the apartment, the defendant discovered the victim to be present  bound hand and foot, naked on the floor. The defendant admitted to retying the victim and moving him to the bed, but he testified that when he left the apartment fifteen minutes later the victim was alive and had not been sexually assaulted. The victim's dead body was later discovered; he had been violently assaulted anally and strangled with a necktie.
Bryant is clearly distinguishable from the present case even when all the evidence presented is viewed in the light most favorable to Parker. In Bryant the defendant did not participate in creating the circumstances which directly led to the victim's death. Parker, on the other hand, created the initial situation by threatening to kill Groover if he did not reimburse Parker for drugs he had fronted to Padgett. In Bryant, the defendant claimed to have withdrawn entirely from the scene and to have fulfilled his role in the criminal enterprise before the rape and murder began. Parker was on the scene and was still demanding repayment when Padgett was murdered. Finally, the acts of rape and murder are not inspired by the same criminal motivation which induced Bryant's participation in a burglary for pecuniary gain. *753 Parker, however, was, at the very least, aware that Padgett was being driven to the woods against his will as part of the ongoing terrorization for failure to pay his drug debt and to keep him from seeking reinforcements from his relatives and mounting a retributive attack on Groover and Parker. The murder was a natural and foreseeable culmination of the motivations for the original kidnapping. As a principal to the kidnapping, Parker is a perpetrator of the underlying felony and thus a principal in the homicide. Goodwin v. State, 405 So.2d 170 (Fla. 1981). We find no error in the failure to give the requested instruction.
Of more concern is the state's advising the jury that Elaine Parker, appellant's ex-wife and a participant in the sequence of events giving rise to the murders, had pleaded guilty to one count of second-degree murder pursuant to a plea bargain. Appellant cites Thomas v. State, 202 So.2d 883 (Fla. 3d DCA 1967), and Moore v. State, 186 So.2d 56 (Fla. 3d DCA 1966), as holding that revealing a co-felon's conviction or entry of a guilty plea was impermissibly prejudicial to the fairness of the trial. We agree in principle with Judge Pearson's analysis in Thomas:
As a general rule, it is improper for a prosecuting attorney to disclose during trial that another defendant had been convicted or has pleaded guilty. This is because competent and satisfactory evidence against one person charged with an offense is not necessarily so against another person charged with the same offense. Each person charged with the commission of an offense must be tried upon evidence legally tending to show his guilt or innocence.
202 So.2d at 884.
Nonetheless, while we find the revelation of Elaine's plea to be error, on the unique facts of this case we must find that error to be harmless. First, it cannot be fairly argued that placing Elaine's plea before the jury foreclosed any viable option Robert had of denying involvement. The state had assembled too many eyewitnesses to Parker's presence during and participation in the sequence of events in which the murders occurred for him to offer a defense of non-participation. Rather, he admitted his presence during and participation in all but the physical act of murder, but he defended his actions on a theory of an independent act of a co-felon in the Padgett murder and a theory of duress in the Dalton and Shepard killings. Both theories of defense rely on Parker's own subjective perceptions of the events and on his personal formulation of intent. Elaine's plea of guilty could not be construed as rebutting any portion of Robert's defense inasmuch as her perceptions and formulation of intent could not be imputed to him, nor his to her. Thus, Robert's defense was not fundamentally prejudiced because the jury knew Elaine had entered a guilty plea to a charge of second degree murder. Additionally, the trial judge included in the jury instructions a curative admonition that a co-felon's plea should not be considered as relevant to the issue of defendant's guilt.
Finally, we must address the state's use of a police investigator to testify to a witness's reputation in the community for truth and veracity. The defense attorney argued strenuously at trial against the admission of this testimony, citing Stripling v. State, 349 So.2d 187 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1220 (Fla. 1978), for the proposition that a police investigator may not be used as a witness to reputation in the community. The state countered with the argument, accepted by the trial judge, that the subject had no fixed community of residence but that he had been extensively involved with the criminal justice system and had spent the previous year in Duval County Jail. Thus, the state reasoned, the subject's "community" was the criminal justice system and the police officer, as part of that system, was a member of the community for purposes of testifying about the subject's reputation for truth and veracity. We find this construction of the rules of evidence novel but unacceptable. It has *754 long been accepted that in the absence of sufficient contact with a community of residence to establish a reputation for truth and veracity, evidence of that reputation in another social context will be admissible. Hamilton v. State, 129 Fla. 219, 176 So. 89 (1937). However, we do not agree that the criminal justice system is either neutral enough or generalized enough to be classed as a community or that an officer in that system is equipped to provide an unbiased and reliable evaluation of an inmate's general reputation for truth-telling. Nonetheless, the witness whose testimony was attacked was only material to the defense case insofar as he accused Long of lying about Parker's active involvement in the Sheppard murder and his credibility was subject to impeachment on his record. In light of the totality of the evidence presented both by Long and by Parker himself, we find this error to be harmless.
In addition to considering all other issues raised on appeal, we have conducted an independent review of the record on trial and find no reason to award a new trial. Accordingly, the convictions are affirmed.
In sentencing Parker to death for the Sheppard murder in spite of the jury's recommendation of life, the trial judge found that Parker had been previously convicted of another violent felony, the murder was committed during a robbery, the murder was committed to avoid lawful arrest, the murder was committed for pecuniary gain, the murder was especially heinous, atrocious and cruel, the murder was cold, calculated and premeditated. We cannot accept the findings that the murder was committed during a robbery or that it was especially heinous, atrocious or cruel. Although Parker admitted taking the victim's necklace and ring from her body after her death, the evidence fails to show beyond a reasonable doubt that the murder was motivated by any desire for these objects. The motive expressed at the time of the killing was to keep the victim from implicating the murderers in the death of Richard Padgett. Nancy Sheppard had offered the jewelry to Parker the evening before she was killed as payment for Padgett's debt. Parker refused it at that time and there is no indication that taking it after her death was more than an afterthought, rather than a motive for murder. This evidence does not satisfy the standard of proof beyond a reasonable doubt on which the finding of an aggravating factor must be based. Williams v. State, 386 So.2d 538 (Fla. 1980).
We note in passing that the finding that the murder was for pecuniary gain was not based on the taking of the jewelry. Rather, the trial court stated that the entire sequence of events in which the murders occurred was touched off by Parker's desire to establish a remunerative drug-dealing network and his need to establish a reputation as a collector of debts. The evidence amply supports this finding and we accept it.
We find the same lack of proof in the determination that the murder was especially heinous, atrocious and cruel. Evidence showed that Sheppard left her home willingly, expecting to meet her boyfriend, Padgett, in the woods. Her first indication that something was amiss came when she saw his body in the ditch. She fell to her knees, covered her face with her hands and cried out. Almost immediately she was shot and killed, execution style. There was nothing unusual in the manner or method of effecting the crime. We do not gainsay the pathos surrounding the murder of this young girl. However, this aggravating factor cannot properly be considered.
The trial court found no mitigating circumstances to balance against the aggravating factors, of which four were properly applied. In light of these findings the facts suggesting the sentence of death are so clear and convincing that virtually no reasonable person could differ. Tedder v. State, 322 So.2d 908 (Fla. 1975). The jury override was proper and the facts of this case clearly place it within the class of homicides for which the death penalty has been found appropriate. Spaziano v. Florida, *755 ___ U.S. ___, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).
Accordingly, the sentence of death is affirmed.
It is so ordered.
BOYD, C.J., and OVERTON, ALDERMAN, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in the convictions, but concurs in the result only of the sentence.
McDONALD, J., concurs in the convictions, but dissents from the sentence.