787 So.2d 27 (2001)
Mark THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D97-1816.
District Court of Appeal of Florida, Second District.
February 14, 2001.
Rehearing Denied April 16, 2001.
*28 Bjorn E. Brunvand of Bjorn E. Brunvand, P.A., Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Acting Chief Judge.
A jury convicted Mark Thomas of first degree felony murder. We conclude that the trial court should have granted Thomas's request for an independent act jury instruction. Therefore, we reverse and remand for a new trial.
Thomas, Matthew Rodriguez and Donald Miller plotted to rob Tonya Sargeant, the night manager of a drugstore in St. Petersburg where Thomas worked. The plan called for Rodriguez and Miller to wait in some bushes next to the store parking lot until Sargeant emerged. They would ambush her and demand the night's cash receipts, then spray her with mace and run to a getaway car waiting down an alley a few blocks behind the store. To avoid identification, Thomas was to remain with the car. Tragically, when the plan was carried out Sargeant was shot to death.
At Thomas's trial the evidence conflicted about how and when the endeavor came to involve a firearm. A police detective recounted Thomas's statement in which he acknowledged that he knew they were going to commit a robbery that night, but asserted that he did not know anyone was going to use a gun. According to Thomas, he drove Rodriguez and Miller to the alley, as planned. Rodriguez and Miller departed to lay in wait for Sargeant. But Miller returned to the car about fifteen minutes later, exclaiming that Rodriguez was crazy and that he had a gun. Miller told Thomas to get out of there. They drove in the vicinity of Rodriguez's hiding spot, calling out the window to him and whistling to signal that the robbery should be aborted. When Rodriguez failed to appear, they drove to an adjacent grocery store and then heard a gunshot.
Rodriguez, who had been convicted of first degree murder in a separate jury trial, testified for the State in Thomas's trial. His version implicated Thomas and Miller in a plan that included the use of a gun and mace. Rodriguez asserted that Miller had supplied him with a friend's gun, and that Thomas had given him money with which to buy bullets.
Otherwise, the rest of Rodriguez's story jibed with Thomas's. Rodriguez recalled that Miller had left the scene when Rodriguez accosted Sargeant. Unexpectedly, Sargeant was accompanied by a male co-worker, and she did not have the night receipts. Rodriguez raised the gun and demanded her purse. He recounted that when Sargeant gave him the purse he looked over his shoulder for Miller. As he did so, he felt the gun discharge. The co-worker who accompanied Sargeant that night disputed this last assertion. He testified *29 that Rodriguez pointed the gun directly at Sargeant's head, demanded her purse, and simply pulled the trigger as she was removing the purse strap from her head and shoulder. Both Rodriguez and the co-worker recalled that after the shooting Rodriguez looked at the co-worker, then turned and ran.
Other testimony tended to support Thomas's claim that he and Miller had tried to halt the planned robbery when they learned that Rodriguez had a gun. Sandy Lyon, Rodriguez's friend, was present when Rodriguez returned home after the incident. She testified that Rodriguez exclaimed to Thomas and Miller "You guys left me." Miller responded "I whistled to you and the whistle was supposed to mean don't do it." Erika Rodriguez, Rodriguez's sister, testified that Thomas said to him, "We didn't want you to do it."
Where there is any evidence introduced at trial which supports the theory of the defense, the defendant is entitled to have the jury instructed on the law applicable to his theory of defense when he so requests. See Bryant v. State, 412 So.2d 347, 350 (Fla.1982). In felony murder cases the independent act doctrine "arises when [the defendant], who previously participated in a common plan, does not participate in acts committed by his cofelon, `which fall outside of, and are foreign to, the common design of the original collaboration.'" Ray v. State, 755 So.2d 604, 609 (Fla.2000) (quoting Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995)). The doctrine is most easily applied when there is evidence suggesting that the murder was committed as an afterthought, following an identifiable break in the chain of events. See, e.g., Bryant, 412 So.2d at 350 (holding that defendant who participated in robbery was entitled to an independent act instruction where evidence indicated that homicide occurred after he had left the scene and in the course of cofelon's commission of a sexual battery that was not part of their common scheme); Rodriguez v. State, 571 So.2d 1356 (Fla. 2d DCA 1990) (holding that defendant was entitled to an independent act instruction where murder was committed by cofelon after defendant had exited the store, and the defense theory was that the murder was a spiteful act of the cofelon as an afterthought to the attempted robbery).
On the other hand, the independent act doctrine does not apply when the evidence demonstrates that the murder was committed in furtherance of the initial criminal scheme. See Lovette v. State, 636 So.2d 1304 (Fla.1994) (rejecting independent act instruction where murders committed to lessen possibility of detection and apprehension of robbers); Parker v. State, 458 So.2d 750 (Fla.1984) (holding that defendant who participated in kidnaping as part of effort to terrorize victim into paying his portion of drug debt to defendant could not claim that cofelon's murder of victim was an independent act). See also Ray, 755 So.2d at 609 (rejecting independent act instruction where murder facilitated escape from robbery scene); Dell, 661 So.2d at 1306 (holding independent act instruction inapplicable where evidence demonstrated that murders of store clerks were meant to eliminate the only eyewitnesses to robbery).
The instant case does not fall neatly within either scenario. Here, although Thomas and his cohorts certainly intended to rob Sargeant, evidence at trial suggested that their scheme specified the use of nonlethal force. When Thomas and Miller discovered that their accomplice had armed himself with a deadly weapon, they immediately withdrew from the undertaking and attempted, albeit ineffectively, to call the whole thing off. Cf. Dell, 661 So.2d at 1307 (rejecting defendant's claim *30 that accomplice's murder of store clerk was an independent act in part because defendant failed to withdraw from robbery attempt or disavow accomplice's actions when accomplice previously attempted to kill another clerk during the robbery). Moreover, the evidence did not conclusively establish that Rodriguez murdered Sargeant to further the criminal scheme by eliminating the eyewitnesses or assisting Rodriguez's escape, as might have been inferred if he had also shot the co-worker. See Rodriguez, 571 So.2d at 1357 (crediting defendant's argument that since the entire episode was filmed by three visible surveillance cameras, it was arguable that accomplice did not commit murder to eliminate witness to attempted robbery). Cf. Dell, 661 So.2d at 1307 (observing that evidence led to one conclusionthat defendant's accomplice shot both store clerks in an effort to eliminate the only eyewitnesses to the armed robbery).
Under the circumstances of this case, we conclude that Thomas was entitled to a jury instruction on his theory that Sargeant's murder was Rodriguez's independent act, and not committed in furtherance of the men's initial criminal scheme.
Thomas also objected and made a motion for mistrial during closing arguments when the prosecutor made comments that improperly appealed to the jury's sympathy for the victim. Closing argument "must not be used to inflame the minds and passions of the jurors." Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985). It is improper for the State to evoke the jury's sympathy regarding the victim. See Watts v. State, 593 So.2d 198, 203 (Fla. 1992). Although we do not conclude that the error during closing argument was so prejudicial as to vitiate the entire trial, see King v. State, 623 So.2d 486 (Fla.1993), we are particularly disturbed by the prosecutor's blatant persistence in making improper comments despite a sustained objection, a court warning and a curative instruction. We caution the prosecutor to give greater deference both to the trial court's rulings and to the defendant's right to a fair trial. See State v. Murray, 443 So.2d 955, 956 (Fla.1984).
We reverse and remand for a new trial consistent with this opinion.
CASANUEVA and SALCINES, JJ., concur.