841 So.2d 690 (2003)
Johnnie A. PITTMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-5100.
District Court of Appeal of Florida, Second District.
April 11, 2003.
*691 James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Johnnie A. Pittman appeals his conviction for second-degree murder. He argues that the trial court erred by not giving a requested jury instruction concerning an independent act causing the victim's death. We agree and reverse. Pittman also argues that the trial court erred by not advising the jury of the possible sentences that Pittman might receive if convicted. We find no reversible error as to this issue. See Broughton v. State, 790 So.2d 1118,1119 (Fla. 2d DCA 2001).
In September 1999 James Harsaghy, a white man, went to a bar where he bought drinks for different people. The bar was described as serving a primarily African-American clientele, and there was testimony that it was unusual for a white person to be in that area at that time of night. Harsaghy offered a beer to Pittman, who took it, and they began talking. After the bar closed, Harsaghy, Pittman, and another person went next door to a barbecue restaurant to get take-out food. As the three individuals walked back across the parking lot, several young black men surrounded Harsaghy and demanded money from him. When Harsaghy refused, one of the men hit him on the head, knocking him to the ground. The men who accosted Harsaghy attacked him, kicking and beating him. There was evidence that others also participated in the beating. Witnesses gave different estimates as to how many individuals participated, ranging from under ten to perhaps fifty.[1] Harsaghy died from his injuries.
There was conflicting evidence as to whether Pittman participated in planning the robbery or in beating Harsaghy. One person testified that Pittman was not even in the area when the beating occurred, although he returned and took money from Harsaghy's pockets after the crowd dispersed. Others also went through Harsaghy's pockets after he was beaten.
In a statement made to police that was admitted into evidence, Pittman claimed that before the beating he heard one of the men tell Harsaghy that they wanted his money. Pittman told the men to just ask Harsaghy for money and Harsaghy would give it to them because he had a good heart. Pittman stated that one of the men hit Harsaghy, knocking him down, and then the others kicked and stomped on Harsaghy. Pittman admitted that after Harsaghy was beaten, he went through Harsaghy's pockets and took his money. Pittman kept some of the money and gave some to the others.
*692 The State sought to prove that Pittman committed first-degree murder while robbing or attempting to rob Harsaghy. Pittman presented a two-pronged defense. First, he claimed that he did not participate in planning or committing the robbery or in beating Harsaghy, but instead he simply committed a theft by taking Harsaghy's money as an afterthought to the beating that others inflicted on Harsaghy. Second, he claimed that even if the jury believed that he had participated in planning the robbery, he did not participate in beating Harsaghy; he had separated himself from the crowd that beat Harsaghy; and the beating was a distinct criminal act committed by others. Based on the evidence and the defense's theories, Pittman requested that the trial court give an independent act instruction to the jury.
"The `independent act' doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, `which fall outside of, and are foreign to, the common design of the original collaboration.' " Ray v. State, 755 So.2d 604, 609 (Fla.2000) (quoting Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995)). When a cofelon takes acts exceeding the scope of the original plan, the defendant is exonerated from any punishment that is imposed as a result of the independent act. But if a murder is committed in furtherance of an initial criminal scheme, then the doctrine does not apply. Id.
The determination of whether the independent act instruction should be given depends on the evidence. If any evidence is introduced at trial which supports the defense's theory, the jury must be instructed on the law applicable to the theory when requested by the defendant. Bryant v. State, 412 So.2d 347, 350 (Fla. 1982); Thomas v. State, 787 So.2d 27, 29 (Fla. 2d DCA 2001).
In Thomas, the defendant and two others planned to rob the victim. There was evidence suggesting that the robbery scheme specified the use of nonlethal force, that Thomas was unaware that one of the men possessed a gun, and that Thomas and another participant tried to call off the robbery. Thomas, 787 So.2d at 28-29. The court noted that although there was contradictory evidence and the facts did not fit neatly within the typical scenario for giving the independent act instruction, because there was evidence supporting a theory of the defense the independent act instruction should have been given. Id. at 30.
In Bryant, there was evidence of a robbery, a sexual assault, and a murder. Bryant was convicted of killing the victim by strangulation from either a premeditated design or while engaged in the perpetration or attempted perpetration of a robbery. Bryant's theory of defense was that his cofelon or some other person committed a sexual assault after the robbery, and the jury could have determined that the sexual assault was an independent act that Bryant did not participate in and which was outside of, and foreign to, the common design to rob the victim. The supreme court held that because there was evidence supporting the defense's theory, the requested independent act instruction should have been given. Bryant, 412 So.2d at 349-50. See also Rodriguez v. State, 571 So.2d 1356, 1357 (Fla. 2d DCA 1990) (concluding that the defendant was entitled to an independent act instruction because evidence existed from which the jury could determine that the acts resulting in murder were independent and were not committed to further, or in the course of, the joint felony).
Although there was substantial evidence implicating Pittman, there was also conflicting evidence that supported the theories *693 presented by the defense. Under these circumstances, the jury should have been given the independent act instruction. Accordingly, we reverse Pittman's conviction and remand for a new trial for second-degree murder.
NORTHCUTT and STRINGER, JJ., concur.
NOTES
[1] Although not a specific theory of the defense, there is at least some suggestion that the beating may have been racially motivated or that it occurred due to an out-of-control crowd.