875 So.2d 823 (2004)
Eric MILLS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-5693.
District Court of Appeal of Florida, Second District.
July 2, 2004.
*824 James Marion Moorman, Public Defender, and Terrence E. Kehoe, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jenny Scavino Sieg, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Eric Mills appeals his convictions for first-degree murder and home-invasion robbery, asserting that the trial court committed two errors, either of which requires a new trial. He first contends that it was error for the trial court to deny him a mistrial when the State did not present a witness whose anticipated testimony the prosecutor had detailed in his opening statement. Second, he claims prejudicial error in the trial court's refusal to give his requested independent act instruction to the jury. Finding merit only in his first contention, we reverse and remand for a new trial.
*825 The evidence presented at trial showed that four persons, three masked men and a woman, participated in the home-invasion robbery of Leo Dempsey. Of the four, Mr. Dempsey could only identify the woman, Erica Brown, from a previous acquaintance. Mr. Dempsey testified that while the four were still in his home, a neighbor, Dwight Fleming, came to the rear door seeking Mr. Dempsey. Before Mr. Fleming was allowed in, one of the men took Mr. Dempsey and Ms. Brown to another room, pulled a shirt over Mr. Dempsey's head, and held the two at gunpoint.[1] Mr. Dempsey told the jury that he heard a scuffle near the rear door, then two back-to-back gunshots. After the shots were fired, Ms. Brown and the three men fled. Mr. Dempsey found Mr. Fleming in a pool of blood and called 911. Mr. Fleming died from two gunshot wounds, one to his head and one to his neck.
A few days later, Mr. Mills confessed to the home-invasion robbery, but at trial he retracted his confession. He explained to the jury that he had confessed only to help out Ms. Brown, who was his sister, and his brother Michael, who had been charged with committing these crimes; the three of them believed he would be treated more leniently because he had no prior record. During his interview with the detective investigating the crimes, he repeated his confession on tape because he had been told by police officers that he would not be charged with the murder, just the robbery. His taped confession, including how he was holding Mr. Dempsey at gunpoint in another room when Mr. Fleming was shot, was played for the jury. Despite his confession, he maintained to the jury that he was not present during this criminal episode.
During his opening statement, the prosecutor had extensively detailed the facts of Ms. Brown's expected testimony. The prosecutor told the jury that Ms. Brown had pleaded guilty to the second-degree murder of Mr. Fleming in return for her truthful testimony and that she would serve twenty years in prison. He described in detail Ms. Brown's version of the planning and execution of the robbery, including the fact that Mr. Mills was holding Mr. Dempsey at gunpoint in another room when Mr. Fleming was shot. Later, when the State called her to testify, Ms. Brown refused, invoking her Fifth Amendment privilege, and the trial court declined to compel her testimony. Because the State was unable to provide her as a witness, defense counsel moved for a mistrial following the close of the State's case. Defense counsel asserted that because the prosecutor outlined Ms. Brown's testimony in his opening statement about Mr. Mills's participation, and because she did not then testify, Mr. Mills was severely prejudiced. The trial court denied the motion for mistrial and prohibited defense counsel from commenting in closing argument on Ms. Brown's failure to testify.
Additionally, at the charge conference, defense counsel sought an independent act jury instruction. The defense theory was that the independent act of one of the other coperpetrators caused the victim's death because the evidence showed that Mr. Mills neither intended for a death to occur nor participated in the murder of Mr. Fleming.
The resolution of the first and dispositive issue is governed by Jackson v. State, 818 So.2d 539 (Fla. 2d DCA 2002). See also Maddox v. State, 827 So.2d 380 *826 (Fla. 3d DCA 2002), review denied, 845 So.2d 891 (Fla.2003). In Jackson, a case involving the stop of the defendant's car, the prosecutor told the jury in opening statement that the evidence would show the passenger indicated to the officer that the defendant had contraband concealed in his groin area. The State did not call the passenger to testify, nor did the officer testify about any statements or gestures by the passenger. This court found prejudicial error in the combination of the prosecutor's suggestion in opening statement that additional evidence would corroborate the officer's testimony and the State's failure to place those facts in evidence. Thus, the alleged corroborating evidence was never subjected to cross-examination by the defense and evaluation by the jury. Jackson, 818 So.2d at 542 (concluding that the error was not harmless because the case boiled down to a credibility contest between the defendant and the police officers).
In Maddox, the Third District reversed a conviction because the prosecutor alleged in opening that the defendant had made an incriminating statement to a police officer but the officer never testified. The court held, citing Jackson, 818 So.2d at 542, that the "foregoing facts prejudiced Maddox because the State basically suggested that there was other evidence in support of its case, but then failed to offer it and subject it to cross-examination by Maddox and evaluation by the jury." Maddox, 827 So.2d at 381.
Similarly, we conclude that it was error for the court to deny the motion for mistrial when the State failed, through no fault of its own, to present Ms. Brown as a witness after the prosecutor had extensively recited during opening statement her anticipated testimony implicating Mr. Mills. Both Jackson and Maddox compel reversal.
Mr. Mills's second issue is that the trial court erred when it refused to give an independent act instruction. The independent act doctrine triggers a special jury instruction when evidence is presented that the defendant, who previously participated in the common plan with cofelons, did not participate in the cofelons' acts that were alien to the original collaboration. "Under these limited circumstances, a defendant whose cofelon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act." Ray v. State, 755 So.2d 604, 609 (Fla.2000). However, the doctrine does not apply if the murder is committed in furtherance of the initial criminal scheme. Pittman v. State, 841 So.2d 690, 692 (Fla. 2d DCA 2003) (citing Ray, 755 So.2d at 609). If any evidence supports the defendant's theory that the act resulting in the charged crime was independent of and not committed in furtherance of the joint felony, the instruction is mandated. Id. (citing Bryant v. State, 412 So.2d 347, 349-50 (Fla.1982)); see also Upshaw v. State, 871 So.2d 1015 (Fla. 2d DCA 2004) (accord).
Here, however, the evidence demonstrated that the murder of Mr. Fleming occurred in the course of and in furtherance of the home-invasion robbery, while Mr. Mills and his cofelons were still inside the home. In Ray, the evidence showed that the murder took place while the felons were in flight from the crime scene; the court thus concluded that the independent act instruction was not warranted because the murder took place during the course of the robbery. Ray, 755 So.2d at 609. The evidence at Mr. Mills's trial showed that when Mr. Fleming was murdered, Mr. Mills was still at the scene holding Mr. Dempsey at gunpoint. This conduct can only be described as "during the course of the home-invasion robbery and "in furtherance *827 of it." Like the defendant and his cofelon in Ray, Mr. Mills and his cofelons had secured weapons, displayed and used them during the course of the home-invasion robbery, and took advantage of the homicide by fleeing. Id. ("Only a finding that the criminal episode had ceased might give significance to Ray's `[cofelon] as the shooter' argument[.]") Contrary to Mr. Mills's contention, we conclude that the trial court did not err by refusing to give the requested independent act jury instruction.
Because of the prejudicial error raised in Mr. Mills's first issue, we reverse and remand for a new trial.
FULMER and WALLACE, JJ., Concur.
NOTES
[1] The group wanted to maintain the fiction that Ms. Brown was an unwitting victim. She had, in reality, gone into the home on a pretext to verify that Mr. Dempsey was alone and signaled to the others that the coast was clear to invade the home.