18 So.3d 562 (2009)
Donna CANNON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-2929.
District Court of Appeal of Florida, First District.
January 12, 2009.
Rehearing Denied February 27, 2009.
*563 Barbara Sanders, Apalachicola, for Appellant.
Bill McCollum, Attorney General, and Christine Ann Guard, Assistant Attorney General, Tallahassee, for Appellee.
DAVIS, J.
Appellant, Donna Cannon, challenges her convictions and sentences for armed robbery with a firearm and first-degree murder. Appellant argued several grounds on appeal, but we write only to address her argument that the trial court abused its discretion in denying her request for an independent act instruction.
At trial, Terrell Powell, Appellant's cousin, testified that Appellant convinced him that he needed to rob someone because she was low on money. In preparation for the robbery, Powell stole a shotgun and money to purchase ammunition while Appellant acted as a lookout. Because Powell was only thirteen years old at the time, Appellant, who was twenty-eight years old, purchased the ammunition. Powell also testified that Appellant wanted him to rob Aaron Wilson because she believed that he had money. Appellant gave Powell socks to wear on his hands on the night of the robbery to prevent him from leaving fingerprints. When Powell arrived at the home of Aaron Wilson, he believed that the house was empty. After waiting outside the house, Powell saw a car park behind the house and a man enter the house. Powell approached the man with the shotgun when the man exited the house to sit on the back steps. Powell testified that he shot the man because the man swung a pipe at Powell. Powell grabbed the man's wallet and went back to Appellant's house. Powell testified that he gave the wallet to Appellant. The man Appellant shot was Moses Wilson, Aaron's brother.
At trial, defense counsel asked the court to read the jury instruction for an independent act because the murder of Moses Wilson was outside the scope of Appellant's and Powell's plan to rob Aaron Wilson. The trial court denied the request. The jury convicted Appellant of *564 armed robbery with a firearm and first-degree murder. This appeal follows.
The trial court's decision to withhold a jury instruction is reviewed for an abuse of discretion. Davis v. State, 922 So.2d 438, 444 (Fla. 5th DCA 2006). The trial court's discretion is limited because a criminal defendant is entitled to have the jury instructed on his theory of defense if there is any evidence to support the defense. Id. The trial court should not weigh the evidence to determine whether the instruction is appropriate. Charles v. State, 945 So.2d 579, 582 (Fla. 4th DCA 2006).
The independent act doctrine is applicable "when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, `which fall outside of, and are foreign to, the common design of the original collaboration.'" Ray v. State, 755 So.2d 604, 609 (Fla.2000) (quoting Ward v. State, 568 So.2d 452, 453 (Fla. 3d DCA 1990)). "Where, however, the defendant was a willing participant in the underlying felony and the murder resulted from forces which they set in motion, no independent act instruction is appropriate." Id.
In this case, Powell testified that Appellant helped plan, and even encouraged, the execution of this armed robbery. Powell testified that they never planned to murder anyone and that he only shot Moses Wilson because Moses swung a pipe at him. However, because the murder was the result of the forces set in motion by Powell's and Appellant's plan to commit armed robbery, it is properly considered a part of their common plan. Jones v. State, 804 So.2d 551, 552 (Fla. 3d DCA 2002) ("A killing in the face of either verbal or physical resistance by a victim is properly viewed as being within the original criminal design."). The fact that Powell robbed and shot Moses Wilson, instead of Aaron Wilson, does not remove the murder from the scope of the original plan because the murder was intrinsically related to, and arose from, the original plan to commit armed robbery at the Wilsons' home. Shaw v. State, 824 So.2d 265, 270 (Fla. 4th DCA 2002) (holding that a co-defendant's murder of a taxi cab driver after the driver resisted the robbery arose from, and was intrinsically related to, the planned armed robbery).
The trial court did not abuse its discretion in denying Appellant's request for an independent act instruction because there was no evidence in the record to support this theory. There was no evidence to show that Powell abandoned the original plan to rob Aaron Wilson, and he never testified that he knew at the time of the shooting that the man he shot was not Aaron Wilson. Moreover, a shooting during an armed robbery is a foreseeable event. Washington v. State, 873 So.2d 1268, 1270 (Fla. 4th DCA 2004) ("A shooting that occurs during an armed robbery with a firearm does not exceed the scope of the armed robbery so that an independent act instruction is required."); see also Perez v. State, 711 So.2d 1215 (Fla. 3d DCA 1998); Dell v. State, 661 So.2d 1305 (Fla. 3d DCA 1995). We, therefore, affirm Appellant's convictions and sentences.
ALLEN, J., concurs; BENTON, J., dissents with opinion.
BENTON, J., dissenting.
Donna Cannon was not present when her then 13-year-old cousin, Terrell Powell, shot William Moses Wilson at close range, took his wallet from his trousers, and left him to bleed to death. The prosecution proceeded on the theory that her involvement in preparations for a robbery made her a principal to Moses Williams' robbery, see § 777.011, Fla. Stat. (2003), *565 and thus criminally responsible, not only for Moses Wilson's robbery, but also, under the felony murder rule,[1] for his death. But, while Ms. Cannon and Terrell Powell had planned a robbery together, it was not this one, according to the state's own evidence.
The question thus arose whether the robbery that in fact occurred was "outside of and not a reasonably foreseeable consequence of" the cousins' common design. Fla. Std. Jury Instr. (Crim.) 3.6(l). Quite apart from the felony murder rule[2] was the preliminary issue of what robbery the pair had intended to accomplish. Because the trial court improperly took this preliminary question from the jury, when it denied the appellant's request for an independent act instruction, I respectfully dissent.
At trial, defense counsel requested that the trial court read an independent act instruction to the jury. She argued that the evidence supported a defense theory that appellant had agreed and contemplated only that Powell would rob Aaron Wilson, and that Powell acted outside the scope of the agreement when he decided on his own to shoot and rob Moses Wilson, and did so unforeseeably. She contended she was entitled to an independent act instruction[3] because the evidence supported the inference that Powell's robbing and shooting Moses Wilson, rather than robbing Aaron Wilson as planned, was neither contemplated by her nor reasonably foreseeable.
Whenever any view of the evidence supports a theory of defense valid under state law, the trial court must grant a criminal defendant's request that the jury be instructed on that theory. Davis v. State, 922 So.2d 438, 444 (Fla. 5th DCA 2006); see also Beachy v. State, 837 So.2d 1152, 1152 (Fla. 1st DCA 2003); Charles v. State, 945 So.2d 579, 582 (Fla. 4th DCA 2006); Gregory v. State, 937 So.2d 180, 182 (Fla. 4th DCA 2006) ("A criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is any evidence to support it, no matter how weak or flimsy."). Appellate courts review rulings on requests for jury instructions for abuse of discretion. See Charles, 945 So.2d at 582; Davis, 922 So.2d at 444. In criminal cases, *566 however, "the trial court's discretion in this regard is rather narrow...." Id.
The jury should have been instructed to decide whether Moses Wilson's robbery and murder were the independent acts of Powell, perpetrated outside what Powell and Ms. Cannon had plannedAaron Wilson's robberyand an unforeseeable consequence of their plan. Powell testified he had never met Moses Wilson, that he had never talked to him, that he did not "kn[o]w him or anything like that." There was no evidence in this recordand the prosecutor did not contendthat Powell mistook the victim for Aaron Wilson.
The state argues Ms. Cannon was vicariously liable for Terrell Powell's robbery and murder[4] of Moses Wilson, on the theory that she is "liable for any acts, whether [s]he knew of them ahead of time or not, committed by an accomplice in furtherance of" a common criminal design to commit a crime. Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995) (quoting Diaz v. State, 600 So.2d 529, 530 (Fla. 3d DCA 1992)); see also Jacobs v. State, 396 So.2d 713, 716 (Fla.1981) ("One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime." (citing Pope v. State, 84 Fla. 428, 94 So. 865 (1922))); Charles, 945 So.2d at 581-82 ("Under the law of principals, a defendant will be treated as if he did all the acts performed by the others involved in the perpetration of a crime if (1) the defendant `ha[d] a conscious intent that the crime be done' and (2) the defendant `d[id] some act or sa[id] some word which was intended to and d[id] incite, cause, encourage, assist, or advise another person to actually commit the crime.'" (quoting R.J.K. v. State, 928 So.2d 499, 503 (Fla. 2d DCA 2006))).
Ms. Cannon was, to be sure, thoroughly implicated (albeit by the testimony of a single witness, the admitted perpetrator) in planning and preparing for a robbery.[5] *567 But the intended victim was Aaron Wilson, who shared his home in rural Gadsden County with his wife, stepdaughter, grandson, and a brother, Moses Wilson. According to Powell, the accomplice who testified for the State, he and appellant hatched a plan to rob Aaron Wilson: They believed Aaron Wilson kept money on hand, because he had paid Powell to perform yard work. Powell told an investigator unequivocally that the appellant "didn't want [Moses]," but "wanted [Powell] to do the brother [Aaron]," instead, on the premise that Aaron Wilson had "a lot of money."
After a visit to Ms. Cannon on August 8, 2003, appellant set out to rob Aaron Wilson, found a place to lay his bicycle down, and walked into a "little old house" on the Wilson property with a shotgun. Finding no one home, he sat down for a "couple of minutes," before leaving the house. (Unbeknownst to him, his intended victim was in the house asleep.) Outside again, he put the shotgun down, walked around "for a couple of minutes," then retrieved the shotgun, and hid behind some cane bushes near the house, which is where he was when a car pulled up and parked in the backyard.
Aaron Wilson, asleep inside, "didn't come," but a man who would not have recognized Powell"didn't know [him] at all"exited the vehicle, entered the house, then reemerged, drinking a beer and smoking, onto the back steps of the house. Powell waited for a few minutes, "debating" and "crying and stuff" until he "worked enough nerves" to accost the man, shotgun in hand. When the man spotted him and swung a pipe at him, Powell fired. The man, then about 10 to 12 feet away, fell down face first, whereupon Powell took the man's wallet out of his back pocket and ran.[6] Some hours later the man, Moses Wilson, died from the injuries Powell had inflicted.
Of crucial importance is the character and scope of the common design appellant and Powell agreed upon, because "an act in which a defendant does not participate and which is `outside of and foreign to, the common design' of the original felonious collaboration may not be used to implicate the non-participant in the act." Parker v. State, 458 So.2d 750, 752 (Fla.1984) (quoting Bryant v. State, 412 So.2d 347, 349 (Fla.1982)). "The `independent act' doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, `which fall outside of, and are foreign *568 to, the common design of the original collaboration.'" Ray v. State, 755 So.2d 604, 609 (Fla.2000) (quoting Dell, 661 So.2d at 1306). The doctrine operates to "exonerate one defendant from acts committed outside of the original plan or design by a co-felon." Dell, 661 So.2d at 1306 (citing Parker, 458 So.2d at 752); see also Beachy, 837 So.2d at 1152. Whether Powell's robbery of Moses Wilson took place outside the original plan or design, the initial felonious collaboration, was a question for the jury.
The state put on evidence at trial that Powell and appellant agreed Powell should rob Aaron, not Moses, Wilson, and that Powell decided to rob Moses Wilson later, by himself, after he failed to find Aaron Wilson. This testimony supported an independent act instruction. See, e.g., Beasley v. State, 774 So.2d 649, 662-63 n. 10 (Fla.2000); Bryant, 412 So.2d at 350 (finding defendant entitled to requested independent act instruction where jury could have concluded from the evidence that defendant withdrew from criminal enterprise (a plan to rob victim) before victim had been subjected to sexual battery and killed); Charles, 945 So.2d at 583 (holding trial court erred in refusing to give independent act instruction where defendant accused of felony murder as a principal testified that he and alleged co-felons had no plan to rob victim and that defendant only agreed to participate in aggravated assault of victim); Thomas v. State, 787 So.2d 27, 29 (Fla. 2d DCA 2001) (holding trial court erred in failing to give requested independent act instruction where evidence indicated that defendant and co-felons planned to rob victim using only nonlethal force and that defendant and one co-felon attempted to withdraw from undertaking when they discovered other co-felon had armed himself with a deadly weapon); Rodriguez v. State, 571 So.2d 1356, 1357 (Fla. 2d DCA 1990) (holding trial court erred in failing to give independent act instruction where evidence supported theory of defense that co-felon murdered convenience store clerk after robbery attempt failed out of spite and "as an afterthought to the attempted robbery"). In the present case, appellant was not even at the scene.
The trial court declined to give the independent act instruction,[7] however, ruling it inapplicable to the state's felony murder theory and finding no independent act as a matter of fact, stating "somebody was going to get robbed that night with that gun." But see Charles v. State, 945 So.2d *569 579, 582 (Fla. 4th DCA 2006) ("The trial court should not weigh the evidence for the purpose of determining whether the instruction is appropriate." (quoting Gregory v. State, 937 So.2d 180, 182 (Fla. 4th DCA 2006))).
The trial court should have given the requested instruction and so let the jury decide whether appellant had implicitly agreed to Moses Wilson's robbery or, if not, whether his robbery and murder were "a natural and foreseeable culmination of the motivations for the original" common design, as opposed to independent acts by Powell. Parker, 458 So.2d at 753. It was a jury question whether the state proved, beyond a reasonable doubt, that Powell's robbing and murdering Moses Wilson was not outside his original agreement with appellant to rob Aaron Wilson, and not a reasonably foreseeable consequence of the agreement. See Beachy, 837 So.2d at 1153; Barfield v. State, 762 So.2d 564, 567 (Fla. 5th DCA 2000).
The trial court erred in weighing the evidence itself and ruling out independent acts on Terrell Powell's part, without letting the jury consider the question. See Charles, 945 So.2d at 582 (observing that a trial court "should not weigh the evidence for the purpose of determining whether the instruction is appropriate" (quoting Gregory, 937 So.2d at 182)). Having proposed the theory that Powell acted independently when he robbed and murdered Moses Wilson, which is one view of the evidence, appellant was entitled to have the jury decide whether Powell's actions constituted independent acts for which she was not criminally responsible. Gregory, 937 So.2d at 182.
Ms. Cannon ought to be afforded a new trial before a properly instructed jury.
NOTES
[1] The felony murder statute provides that any "unlawful killing of a human being[,] ... [w]hen committed by a person engaged in the perpetration of, or in the attempt to perpetrate," among other things, robbery, constitutes first degree murder, the capital felony of which appellant stands convicted. § 782.04(1)(a)2., Fla. Stat. (2003).
[2] There has been no contention that the slaying of Moses Wilson was independent of his robbery, or that the jury should have been asked to decide whether Moses Wilson's shooting was independent of his robbery. See generally, e.g., Ray v. State, 755 So.2d 604, 608 (Fla.2000) (felony murder rule precluded independent act instruction where defendant actually participated in robbery); Lovette v. State, 636 So.2d 1304, 1307 (Fla. 1994) (same); Parker v. State, 458 So.2d 750, 752-53 (Fla. 1984); Perez v. State, 711 So.2d 1215, 1217 (Fla. 3d DCA 1998); Dell v. State, 661 So.2d 1305, 1307 (Fla. 3d DCA 1995). The question the jury should have been asked to decide, appellant argues, is whether Moses Wilson's robbery and murder were independent of the original, ultimately abandoned plan to rob Aaron Wilson.
[3] The requested instruction reads, as follows:

An independent act occurs when a person other than the defendant commits or attempts to commit a crime
1. which the defendant did not intend to occur, and
2. in which the defendant did not participate, and
3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.
Fla. Std. Jury Instr. (Crim.) 3.6(l).
[4] The felony murder rule and the law of principals combine to make a felon liable for the homicidal acts of a co-felon if the co-felon commits a homicide in furtherance or prosecution of the co-felons' initial common criminal scheme. Lovette, 636 So.2d at 1306 ("As perpetrators of an underlying felony, co-felons are principals in any homicide committed to further or prosecute the initial common criminal design." (citing Adams v. State, 341 So.2d 765 (Fla. 1976))); Bryant v. State, 412 So.2d 347, 350 (Fla. 1982); Beachy v. State, 837 So.2d 1152, 1152 (Fla. 1st DCA 2003); see also State v. Amaro, 436 So.2d 1056, 1061 (Fla. 2d DCA 1983) (holding that "one who aids and abets the commission of a felony" is liable for a homicide committed in furtherance of or "as a probable, predictable, reasonably foreseeable, or causally connected result of the underlying felony" even where the felons had no "premeditated design ... to commit a homicide"). Here, only if appellant was a co-felon in the robbery of Moses Wilson does the felony murder rule operate to make her guilty of his murder, too.
[5] Powell testified that prior to the murder and robbery, he and appellant began discussing robbery, and that appellant had promised to "make [his] dreams come true" if the two were able to get enough money. He wanted a go-kart, among other things. After telling appellant that he knew where he could find a shotgun, Powell stole a gun from the home of a neighbor, Abraham Marshall. He hid the shotgun in a combine behind appellant's house, then told appellant that he had obtained the gun and where he had hidden it.

Powell testified that he told appellant he could find money to pay for the ammunition at Clifton Byrd's (another neighbor's) house. Powell said that appellant acted as a lookout while Powell stole three jars of coins from Byrd's home; that he and appellant loaded the coins in appellant's car; that appellant drove Powell to a grocery store in Tallahassee, where they exchanged the coins for paper money; and that, with the money, appellant purchased ammunition from a Wal-Mart in Quincy while Powell, who was too young to purchase ammunition himself, waited in a different section of the store. In preparation for the robbery, Powell testified, he attempted to disguise himself by wearing a hood that buttoned up under his chin; and took socks that appellant gave him to wear on his hands so that he would not leave fingerprints and because it was cold outside.
[6] He then rode his bike back to appellant's house and gave appellant the victim's wallet, which contained credit cards and 40 dollars in cash. Appellant took the cash, returned the wallet to Powell and told Powell to keep his mouth shut about what had happened. "A defendant cannot be convicted of a charged substantive offense based on evidence which proves involvement only as an accessory after the fact." Smith v. State, 502 So.2d 77, 78 (Fla. 3d DCA 1987) (citing Jackson v. State, 436 So.2d 1085 (Fla. 3d DCA 1983)).

"Although Florida has abolished the common law distinctions between principals, aiders and abettors, and accessories before the fact, accessory after the fact remains a separate offense." Staten v. State, 519 So.2d 622, 626 (Fla. 1988) (footnote omitted). See § 777.03, Fla. Stat. (2003); Donaldson v. State, 722 So.2d 177, 184 (Fla. 1998); Bowen v. State, 791 So.2d 44, 50 (Fla. 2d DCA 2001). "[T]he very definition of the offense precludes an accessory after the fact [from] being convicted as a principal to the underlying crime, regardless of the gravity of the underlying crime." Donaldson, 722 So.2d at 184.
[7] The state argues that appellant was not entitled to an independent act instruction because the defense theory at trial was not that Powell exceeded the scope of his agreement with appellant when he robbed and murdered Moses Wilson, but rather that no agreement between appellant and Powell existed. See Pestano v. State, 980 So.2d 1200, 1203 (Fla. 3d DCA 2008) (holding independent act instruction inappropriate where defense theory at trial, supported by defendant's testimony, was that defendant had no involvement in crime); see also Boyd v. State, 912 So.2d 26, 27 (Fla. 4th DCA 2005) (holding that counsel could not be ineffective for failing to request independent act instruction where defense at trial was that defendant accused of armed robbery had no common plan to participate in any crime with codefendant). But, unlike the defendant in Pestano, who denied any involvement in a crime, appellant did not testify that she and Powell never planned a robbery.

After her request for an independent act instruction was denied, appellant did not argue the independent act theory to the jury during closing argument, but instead argued only that appellant "did not help Powell commit this heinous crime," "did not have any kind of intent that the criminal act be done," and "didn't even know about it." Had the trial court granted her request for an independent act instruction, she could have argued, based on the evidence, that Powell and she had agreed to rob Aaron rather than Moses Wilson and that Powell acted outside the scope of that agreement when, after failing to encounter Aaron in the Wilson home, he elected to rob and murder Moses.