762 So.2d 564 (2000)
Clarence L. BARFIELD, Appellant,
v.
STATE of Florida, Appellee.
No. 5D98-3226.
District Court of Appeal of Florida, Fifth District.
June 30, 2000.
James B. Gibson, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Bonnie Jean Parrish, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, J.
Barfield appeals from his judgment and sentence for armed robbery,[1] after a jury trial[2] and his sentence in another criminal *565 case.[3] He argues the trial court erred 1) in not suppressing his statements/confession made to a police officer during questioning following his arrest; 2) that he was entitled to a jury instruction on the defense of Independent Act,[4] 3) and that in both criminal cases for which he was subsequently simultaneously sentenced, the trial court erred in including three special conditions of probation in the written probation orders which were not announced orally at the sentencing. We reverse in part and affirm in part.
The charges in case number 97-1578 grew out of the taking of an ATM machine located outside a Handy Way store in Eustis, Florida. At 10:00 p.m., Barfield, his brother Kelvin Barfield, and a third man, Jordan Zantiz, inadvertently hit an ATM machine at the Handy Way with a red jeep in which they were riding. After they left the store, they discussed the possibility of going back to the store and prying the ATM loose, and stealing it. They concluded it would be easy to pull off.
At 1:00 a.m. that following morning, they returned in the red jeep, with Barfield driving. Taylor, the manger on duty, had noticed the red jeep in the fire lane in front of the ATM machine shortly after midnight, and when it returned she called 911. At that moment, a man holding a gun, Zantiz, ran into the store, yelling for everyone to get down. He ordered Taylor to open the cash register drawer, and he took $50.00 from it.
At about the same time that Zantiz made his entrance, Barfield backed into the ATM machine and crashed through the store's front glass window, knocking the machine loose. Barfield remained in the jeep. His brother picked up the machine, and with Barfield pulling and his brother pushing, they loaded the ATM machine in the rear of the jeep.
Zantiz returned to the jeep, and drove the vehicle to the Barfields' aunt's house. With some assistance from a cousin, they opened the cash box. Each split the cash equally, giving some to the aunt and cousin. Zantiz kept all of the cash he took from the cash register.
The cousin testified that Kelvin Barfield, as well as the defendant, told her that neither of them knew Zantiz was going to use a gun and go into the store and hold it up. Barfield also repeated that statement to the police. Kelvin testified that neither he nor the defendant were aware that Zantiz had a gun in his possession or in the jeep, nor did they know of Zantiz's taking money at gunpoint from the cash register. Barfield, however, told the police that he knew that Zantiz routinely carried a gun.
With regard to the correctness of the trial court's ruling that Barfield's statements to the police should not be suppressed, we doubt that issue has been preserved for appellate review. Barfield did not, after obtaining an unfavorable ruling, enter a plea and seek review of the order.[5] Rather he proceeded to trial and failed to make appropriate objections to the state's presentation of his statements made to the police.[6] Even if Barfield's position has some merit, almost all of Barfield's statements presented through the police witness, were corroborated by the testimony of other witnesses, including his brother, his cousin and his aunt.
Barfield also argues that the three special conditions of his probation,[7] in both *566 cases, should be stricken because they were not orally pronounced at sentencing. See § 948.03(1), Fla. Stat., State v. Williams, 712 So.2d 762 (Fla.1998). However, Barfield made no objection to these conditions at the trial level, and he made no motion to amend the probation order addressed to the trial court. Since they do not constitute fundamental error, they were not preserved for appellate review purposes. See Maddox v. State, 760 So.2d 89 (Fla.2000); Klarich v. State, 730 So.2d 419 (Fla. 5th DCA 1999)
However, we do agree with Barfield that his requested jury instruction 3.04, concerning the Independent Act defense should have been given. That instruction provides:
3.04 INDEPENDENT ACT
If you find that the crime alleged was committed, an issue in this case is whether the crime of (crime alleged) was an independent act of a person other than the defendant. An independent act occurs when a person other than the defendant commits or attempts to commit a crime.
Elements
1. which the defendant did not intend to occur, and
2. in which the defendant did not participate, and
3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.
If you find the defendant was not present when the crime of (crime alleged) occurred, that does not, in and of itself, establish that the (crime alleged) was an independent act of another.
If you find that the (crime alleged) was an independent act of [another] (name of individual) ], then you should find (defendant) not guilty of the crime of (crime alleged).
The Independent Act defense applies to a situation in which, after participating in a common plan or design to commit a crime, one of the co-defendants embarks on acts not contemplated by the other defendants or participants in the crime, and commits additional criminal acts beyond the scope of the original collaboration. Ward v. State, 568 So.2d 452, 453 (Fla. 3d DCA 1990). The purpose of the defense is to exonerate a defendant from acts committed by another defendant, which departed from the original plan. Parker v. State, 458 So.2d 750, 752 (Fla. 1984). See also Bryant v. State, 412 So.2d 347 (Fla.1982); Walker v. State, 671 So.2d 817 (Fla. 4th DCA 1996); Teal v. State, 658 So.2d 603 (Fla. 4th DCA 1995); Rossi v. State, 602 So.2d 614 (Fla. 4th DCA 1992); Rodriguez v. State, 571 So.2d 1356 (Fla. 2d DCA 1990).
The trial judge agreed at the charge conference that the Independent Act defense appeared to "fit," and both the judge and prosecutor agreed there was evidence to support the instruction. However, it was not given because the trial judge thought the jury would be confused by being given that instruction, as well as the principal theory instruction, number 3.01.[8]
That instruction addresses a different aspect of joint criminal activity. It holds a defendant liable for acts performed *567 by another if the proof sustains the jury's view that the defendant intended the criminal act be done, coupled with some act or work to incite, cause, encourage, assist or advise the other to commit the crime. It is the antithesis of the Independent Act defense, and although both instructions could be more plainly worded, both can and should be given in a proper case.
In this case, there was evidence that Zantiz's taking of the money from the cash register and use of his gun to accomplish that act, as well as to further the theft of the ATM machine, was something the Barfields had neither expected nor contemplated. As far as they were concerned, Zantiz's use of the gun was an Independent Act not related to their original scheme of crashing the Jeep into the ATM machine outside the store, and making off with the machine in the back of the Jeep. Indeed, there was also evidence from which the reverse could be inferred, that they knew Zantiz had a gun and inferentially expected him to use it to accomplish the snatch of the ATM machine. However, whether there is evidence to support an instruction which goes to a key defense or element of a crime, the instruction must be given. Failure to do so is reversible error. Parker; Bryant.
Accordingly we reverse the judgment in case number 97-1578 and remand for a new trial. The sentences in case number 97-1997 are affirmed.
AFFIRMED in part; REVERSED in part; REMANDED.
DAUKSCH and COBB, JJ., concur.
NOTES
[1] § 812.13, Fla.Stat. (1997).
[2] Case No. 97-1578.
[3] Case No. 97-1997.
[4] Fla. Std. Jury Inst. 3.04(h).
[5] In fact, the record fails to reveal that a written order was rendered.
[6] Davis v. State, 728 So.2d 341 (Fla. 1st DCA 1999); Schwarck v. State, 568 So.2d 1326 (Fla.3d DC 1990).
[7] Barfield's probation conditions include part of condition 10 (a requirement that the defendant be financially responsible for any drug testing and drug treatment, and condition 11 requiring the defendant to report to a Probation Education Growth Program, and if directed by the probation officer, that the defendant attend an Adult Education Program, and 12, requiring the defendant to pay for a First Step fee.
[8] 3.01 PRINCIPALS

F.S. 777.011
If the defendant helped another person or persons [commit] [attempt to commit] a crime, the defendant is a principal and must be treated as if [he][she] had done all the things the other person or persons did if
1. the defendant had a conscious intent that the criminal act be done and
2. the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually [commit] [attempt to commit] the crime.
To be a principal, the defendant does not have to be present when the crime is [committed] [or] [attempted].