ALTENBERND, Judge.
 

 John B. Williams appeals his convictions for aggravated battery and battery. We affirm the conviction for battery without discussion. Concerning the conviction for aggravated battery, this offense was actually committed by another person, and Mr. Williams was convicted as a principal. He argues that the evidence warranted, in addition to an instruction on principals, an instruction on the issue of an independent act by another person. He maintains the omission of that instruction was not harmless in this case.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 3.6(i). Although there may be occasions in which a defendant is entitled to both an instruction on principals and an instruction on an independent act by another person, in this case we conclude the trial court correctly decided the instruction on principals was adequate to present the issue to the jury. Accordingly, we affirm the conviction for aggravated battery.
 

 I.
 

 The charges in this case arose from a parking lot brawl on July 29, 2006. On that day, a Saturday, a group of acquaintances gathered for an afternoon barbeque at an apartment complex in Temple Terrace. Among the group were Desmond and Rudell Ball, who were working on a car in the parking lot. When John Williams arrived in the parking lot with his
 
 *770
 
 brother, Brandon Williams, and cousin, Willie Williams, a fight broke out between the Williamses and the Balls.
 

 For their involvement in the fight, each of the Williamses was charged with one count of aggravated battery with great bodily harm and use of a weapon arising from the beating of Rudell Ball. Each was also charged with one count of aggravated battery with a deadly weapon arising from the beating of Desmond Ball. John Williams was convicted of simple battery for the beating of Desmond Ball. We focus in this case on the conviction arising from the beating of Rudell Ball.
 

 The three defendants proceeded together to trial by jury. At that trial, the witnesses presented conflicting versions of the events. In general, the State’s theory of the case was that the Williamses arrived at the scene in one car prepared to attack the two victims with various weapons. There was evidence, albeit conflicting, to support this theory. Thus, it was the State’s theory that the men in the car had a common plan to initiate this fight with the Balls before they arrived at the scene of the crime.
 

 On the other hand, John Williams’s theory of the case was that he arrived at the location to pay child support to Desmond Ball’s sister, who is the mother of Mr. Williams’s three children. He and Desmond Ball disliked one another before the events of this day. He testified he drove to the apartment complex with Brandon and Willie Williams to deliver the check. After arriving, he left his car and began looking for the correct apartment, believing Willie and Brandon remained in the car. He testified he encountered two men, one of whom he recognized as Desmond Ball. After exchanging words, John Williams and Desmond Ball began fighting. John Williams testified that he was stabbed through his forearm while fighting with Desmond Ball. This fact was confirmed by one of the State’s witnesses, who claimed responsibility for the stabbing. John Williams recounted that as he ran to leave, he noticed someone lying on the ground. He later learned this person was Desmond Ball’s uncle, Rudell Ball. In his testimony, Willie Williams explained it was Brandon Williams who hit Rudell Ball.
 

 Thus, John Williams maintained that he had no plan or intention to be involved in a fight with the Balls prior to arriving at the scene. Instead, after he separated from the other occupants of the car, he alone was involved in a fight with Desmond Ball. The events involving Rudell Ball were totally separate from his fight with Desmond Ball, and these two events had not been planned in concert.
 

 During the charge conference, each of the Williamses requested an independent act jury instruction. The court declined to give the instruction, reasoning in part that the instruction was not applicable where there was no evidence presented by any defendant of any common design or unlawful act. The jury found each defendant guilty as charged of the aggravated battery on Rudell Ball and guilty of the lesser-included offense of battery as to Desmond Ball. For the aggravated battery, John Williams was sentenced to ten years’ imprisonment followed by twenty years’ probation.
 

 II.
 

 We review the trial court’s withholding of a requested jury instruction under an abuse of discretion standard.
 
 Brown v. State,
 
 11 So.3d 428, 432 (Fla. 2d DCA 2009) (citing
 
 Worley v. State,
 
 848 So.2d 491, 491 (Fla. 5th DCA 2003)). In criminal cases, the trial court’s discretion is limited because “a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any
 
 *771
 
 evidence to support this theory, and so long as the theory is recognized as valid under the law of the state.”
 
 Worley,
 
 848 So.2d at 492;
 
 see also Vazquez v. State,
 
 518 So.2d 1348, 1350 (Fla. 4th DCA 1987).
 

 Thus, the question in this case is whether there was any evidence, however slight, to support an independent act instruction in addition to an instruction on principals. More specifically, we consider what evidence was necessary to support giving the independent act instruction and whether that evidence was presented to the jury under the theories argued. To address these questions, it is helpful to first examine the instructions on principals and on independent act.
 

 The standard jury instruction on principals states:
 

 If the defendant helped another person or persons [commit] [attempt to commit] a crime, the defendant is a principal and must be treated as if [he][she] had done all the things the other person or persons did if:
 

 1. the defendant had a conscious intent that the criminal act be done and
 

 2. the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually [commit] [attempt to commit] the crime.
 

 Fla. Std. Jury Instr. (Crim.) 3.5(a).
 

 The standard jury instruction on independent act states:
 

 If you find that the crime alleged was committed, an issue in this case is whether the crime of (crime alleged) was an independent act of a person other than the defendant. An independent act occurs when a person other than the defendant commits or attempts to commit a crime
 

 1. which the defendant did not intend to occur, and
 

 2. in which the defendant did not participate, and
 

 3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.
 

 Fla. Std. Jury Instr. (Crim.) 3.6(i).
 

 If one examines the principals instructions, it is entirely adequate to encompass Mr. Williams’s theory that he was not a principal to the beating of Rudell Ball. The State was required to prove beyond a reasonable doubt that Mr. Williams had a conscious intent that the act of beating Rudell Ball “be done,” and it was also required to prove that he did some act or said some word which was intended to and did incite, cause, encourage, assist or advise the other person or persons to actually commit this beating.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 3.5(a). Depending on which version of the evidence it believed, the jury could have relied on the principals instruction to acquit Mr. Williams. The independent act instruction would not have added anything to his defense.
 

 The requirement in Florida for an instruction in a criminal case on an independent act arose in connection with the felony murder rule. In felony murder cases, the courts have long required a causal connection between the murder and the underlying felony — specifically, that the death occurred in furtherance of the felony.
 
 See, e.g., Adams v. State,
 
 310 So.2d 782 (Fla. 2d DCA 1975),
 
 vacated on other grounds.
 
 In these cases, if the lethal act was not committed in furtherance of the common scheme or design, then the murder may be shown to be “an independent act of another.”
 
 Bryant v. State,
 
 412 So.2d 347, 350 (Fla.1982). Thus, the act is said to be “independent” not only because it is committed by another person, but
 
 *772
 
 because it is independent of the common scheme or design to commit a felony.
 

 The independent act doctrine “arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofel-on, ‘which fall outside of, and are foreign to, the common design of the original collaboration.’ ”
 
 Ray v. State,
 
 755 So.2d 604, 609 (Fla.2000) (quoting
 
 Dell v. State,
 
 661 So.2d 1305, 1306 (Fla. 3d DCA 1995)). Our caselaw has not limited the independent act instruction’s application to felony murder cases.
 
 See, e.g., Calabrese v. State,
 
 886 So.2d 396, 398-99 (Fla. 1st DCA 2004) (holding court erred in refusing to give independent act instruction in prosecution for conspiracy to traffic in cocaine);
 
 Barfield v. State,
 
 762 So.2d 564, 566 (Fla. 5th DCA 2000) (finding error in refusal to give independent act instruction in prosecution for robbery). Additionally, in these cases, like those felony murder cases requiring the instruction, there was evidence of some common plan or design.
 
 See, e.g., Calabrese,
 
 886 So.2d at 398 (“[T]he jury could have found that although Appellant and Rauf conspired to purchase cocaine, Rauf acted independently in deciding to buy a greater weight of cocaine[.]”).
 

 As recited above, the standard instruction, which the Florida Supreme Court adopted in 1997, defines an independent act to include one which is “outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.” Fla. Std. Jury Inst. (Crim.) 3.6(1). Mr. Williams is essentially arguing that he is entitled to this instruction because the beating of Ru-dell Ball was separate from his individual “unlawful act” of battering Desmond Ball.
 

 We interpret the independent act instruction to require some evidence of a common design or common unlawful act. The State claims the three men went to the scene of the crime to engage in a brawl with all comers. Mr. Williams claims that he simply got into a fight with Desmond Ball after he arrived, that one of the other occupants fought Rudell Ball, and that, overall, the occupants of the car had no common plan. In the absence of any evidence of a common plan to batter Desmond Ball but not Rudell Ball, the trial court did not abuse its discretion in declining to give an independent act instruction.
 

 To the extent that Mr. Williams argues that he was entitled to the independent act instruction because there was evidence that he committed a separate “unlawful act,” we believe Mr. Williams is reading too much into the jury instruction. The caselaw in which this instruction is given does not appear to contain an example of a crime where the defendant had no common plan to commit some crime. For example,
 
 Calabrese,
 
 886 So.2d at 398-99, dealt with a conspiracy to buy and, allegedly, traffic in cocaine;
 
 Barfield,
 
 762 So.2d at 565, involved a plan to steal an ATM. For the reasons explained above, we conclude the instruction is describing a “common ... unlawful act contemplated by the defendant.” It is this common plan or act from which the charged offense is urged to be “independent.” If this were not the case, then a defendant would be entitled to both an instruction on principals and one on independent act in most, if not all, cases in which the principals instruction is given.
 

 Mr. Williams also argues that two baseball bats that were recovered from his apartment should not have been introduced into evidence. We agree that there is little or nothing in this record that connects these two bats to the charged offenses. Given that the bats were ordinary baseball bats common in many American homes, we fail to see their relevance in this case. On the other hand, for essentially the same reasons, we conclude that the
 
 *773
 
 admission of these bats, which was not a feature of the trial, was harmless beyond a reasonable doubt.
 
 State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986).
 

 Affirmed.
 

 CASANUEVA, C.J., and NORTHCUTT, J., Concur.