NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ROGER EARNEST HEARE,    )
    )
    Appellant,    )
    )
v.    )    Case No. 2D15-5362
    )
STATE OF FLORIDA,    )
    )
    Appellee.    )
_____)

Opinion filed November 18, 2016.

Appeal from the Circuit Court for Pinellas
County; Thane Covert, Judge.

Howard L. Dimmig, II, Public Defender,
and Siobhan Helene Shea, Special
Assistant Public Defender, Bartow, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Cerese Crawford Taylor,
Assistant Attorney General, Tampa,
for Appellee.

SILBERMAN, Judge.

Roger Earnest Heare seeks review of his judgment and sentence for

felony battery. The charge arose after Heare went to his former home to reclaim his

personal property without permission and encountered his ex-wife's adult son. Heare

argues that the trial court erred in denying his request for a jury instruction on self-

defense and in overruling two defense objections to police testimony that amounted to opinions on Heare's guilt. We conclude that all three issues have merit and reverse and remand for a new trial.

In 2009, Heare and his wife separated, and she moved out of the marital home. Their divorce was final in May 2015, and the marital home was awarded to the wife although she no longer lived in the home. Heare was incarcerated at some point during the dissolution proceedings, and all of his personal belongings remained in the marital home. The final judgment ordered Heare to stay away from the marital home but permitted him to return to retrieve his belongings if he contacted his ex-wife's attorney first.

Shortly after entry of the final judgment of dissolution, Heare's ex-wife allowed her adult son, Pierre Cline, to move into the former marital home. Cline changed the locks and had a security system installed. Cline was returning to the home in the early evening hours of June 23, 2015, when he saw Heare standing in the alley behind the house. Cline parked his vehicle but stayed outside and called his mother. He then received a call from his alarm company indicating that there had been an unauthorized entry. Cline directed the company to call the police.

The police arrived and spoke with Cline and Heare's ex-wife, who had just arrived on the scene. Heare's ex-wife said that she was the homeowner and Heare was not permitted to enter because he had not contacted her attorney first. She showed the police her copy of the final judgment. Cline, who had served in the military, also told the police that he had firearms in the house that Heare could use if he found them.

Cline's firearms were never an issue, but the police proceeded with caution. As Officer Rexroad began walking up the driveway Heare started to walk out the front door. Heare saw Officer Rexroad approaching and went back inside. Heare stood behind the screen door, held a piece of paper against the screen, and shouted that he had a right to be in the house. When Officer Rexroad continued to approach, Heare slammed the front door shut but did not make any threats.

In the meantime, Officer Smotrich was attempting to determine whether the copy of the final judgment provided by Heare's ex-wife was valid. He searched the county's public records website and called his commander. His commander then attempted to reach the state attorney and Heare's ex-wife's attorney. Ultimately, Officer Smotrich was not able to verify the legality of the document. His supervisors decided not to force entry into the home because they could not confirm that Heare did not have a legal right to be there.

At some point in this process, Cline told the police he was going to enter the home. Cline had served in the army and was a tall, large, fit man. The officers advised him not to go into the house, but he was insistent. A supervisor who was communicating with the officers by phone decided that the police should accompany Cline into the house if he was determined to enter. Sergeant Ku was called to the scene to assist with the entry. Officer Rexroad testified that the plan was made because "[t]here was a very strong likelihood that there was gonna be an incident when [Cline] went back into his own home." He was right.

Cline entered the lock code on the key pad by the front door, but the lock would not disengage. Cline then used a key and was able to turn the lock, but he was

- 3 -

not able to open the door because Heare was pushing against it from the other side. Cline added some force and pushed the door with his shoulder while turning the lock. After a couple of tries, Cline forced the door open, pushing Heare ten to twelve feet into the home. Cline entered the home followed by five police officers. As Cline approached, Heare rushed forward and took a swing at Cline and hit his forearm. Cline easily subdued Heare by forcing him to the ground and holding him there.

Heare was charged with felony battery, burglary, and criminal mischief based on his actions that day. A jury found him guilty of felony battery as charged, guilty of the lesser offense of trespass, and not guilty of criminal mischief. The court imposed a sentence of five years in prison for the battery. Heare raises three issues on appeal.

First, Heare argues that the trial court erred in denying his request for a jury instruction on self-defense. This court reviews a decision to withhold a requested jury instruction for an abuse of discretion. Williams v. State, 34 So. 3d 768, 770 (Fla. 2d DCA 2010). However, the trial court's discretion is limited by the principle that "a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support this theory, and so long as the theory is recognized as valid under the laws of the state." Id. at 770-71 (quoting Worley v. State, 848 So. 2d 491, 492 (Fla. 5th DCA 2003)). The question on review "is whether there was any evidence, however slight, to support" the requested instruction. Id. at 771.

If there is evidence that supports a claim that the victim was the aggressor, the defendant is entitled to a jury instruction on self-defense. Smith v. State, 98 So. 3d 632, 639 (Fla. 4th DCA 2012); see, e.g., Stewart v. State, 672 So. 2d 865,

- 4 -

867 (Fla. 2d DCA 1996) (holding that the trial court abused its discretion in refusing to give a self-defense instruction because there was evidence that the victim approached the defendant in a threatening manner); Cunningham v. State, 159 So. 3d 275, 277 (Fla. 4th DCA 2015) (holding that a self-defense instruction should have been given "[b]ecause there was conflicting evidence as to whether [the victim] behaved in a threatening manner"); Gregory v. State, 937 So. 2d 180, 182 (Fla. 4th DCA 2006) (holding that it was reversible error to refuse to give a self-defense instruction "[b]ecause of evidence that the defendant was first struck by [the victim]").

In this case, the victim himself provided testimony establishing that he was the aggressor. According to this testimony, Heare was holed up in his ex-wife's home and refusing to leave despite the fact that the police had been called to the scene. Cline, who was a tall, large, and fit ex-military man, gained entry to the home by using his shoulder to force the door open. In so doing, Cline pushed Heare back into the home about ten to twelve feet. It was clear that Cline wanted Heare to leave the home, and based on Cline's forcible entry a jury could conclude that it was reasonable for Heare to believe Cline intended to use force to accomplish this goal. Even the police acknowledged that there "was a very strong likelihood" that there was going to be an incident when Cline gained entry.

The facts of this case are analogous to those in Gregory. 937 So. 2d at 181. In Gregory, the victim was the defendant's girlfriend. She was 5' 3" tall, weighed 115 pounds, and was much weaker than the defendant. There was evidence that, after the pair had sex, the defendant left the victim's home so he would not wake the victim in the morning when he went to work. Seconds later, the defendant returned and knocked

on the door. The victim opened the door about halfway, and the defendant attempted to grab some bottles of wine that he had left on the floor next to the door. The victim did not want the defendant to have the wine, "[s]o she started pushing him out the door as hard as she could push." Id. The pair got into a shoving match, and the defendant bashed the victim's head into a picture, the wall, and the floor.

The Fourth District concluded that this evidence was sufficient to merit a jury instruction on self-defense. Id. at 182. The court began by noting that criminal defendants are entitled to have the jury instructed on their "defense where there is *any* evidence to support it, no matter how weak or flimsy." Id. The court also remarked that the trial court was precluded from weighing the evidence because "[i]t is not the *quantum* or the *quality* of the proof as to self defense that determines the requirement for giving the charge." Id. (quoting Kilgore v. State, 271 So. 2d 148, 152 (Fla. 2d DCA 1972)). The court concluded that the trial court erred in refusing to give the defense instruction because there was evidence that the defendant was first struck by the victim.

In this case, as in Gregory, there was evidence that the defendant was first struck by the victim. See id. at 181. Here, Cline forced the front door open, pushing Heare ten to twelve feet into the home. And Cline posed a more serious threat than the victim in Gregory because of his large size and athleticism. While the trial court may have believed that the evidence of self-defense was weak, under all of the circumstances the court erred in refusing to give the requested jury instruction on self-defense.

In Heare's second argument on appeal, he asserts that the trial court erred in overruling his objection to Sergeant Ku's testimony that Heare had "battered" the

victim. Sergeant Ku repeatedly described Heare's actions as a "battery" when the sergeant was describing what happened when Cline entered the home. The State also reiterated this testimony.

It is well-settled that State witnesses may not offer opinions regarding the innocence or guilt of the defendant. See Jackson v. State, 107 So. 3d 328, 339 (Fla. 2012); Martinez v. State, 761 So. 2d 1074, 1079 (Fla. 2000); Glendening v. State, 536 So. 2d 212, 221 (Fla. 1988). This type of testimony is generally excluded "on the grounds that its probative value is substantially outweighed by unfair prejudice to the defendant." Battle v. State, 19 So. 3d 1045, 1047 (Fla. 4th DCA 2009) (quoting Martinez, 761 So. 2d at 1079). And the danger of prejudice is increased when it is the investigating officer who offers such testimony. Id. at 1047-48.

Sergeant Ku's repeated description of Heare's actions toward the victim as "battery" essentially told the jury that he believed Heare was guilty of battery. And the prejudicial value of this testimony was increased because it was a police officer who offered the testimony. Thus, it was error for the court to permit the testimony.

In his third argument on appeal, Heare asserts that the trial court erred in overruling his objection to another statement by Sergeant Ku. During direct examination of Sergeant Ku, the State asked the sergeant, "So if, let's say, Mr. Cline had lunged at the defendant or hit the defendant, would you have taken some action against Mr. Cline?" Over objection, Sergeant Ku replied, "Yes, ma'am. He would've been arrested for battery as well." The State asked whether that had happened, and the sergeant answered it had not.

- 7 -

As with Sergeant Ku's testimony that Heare "battered" Cline, this type of statement improperly told the jury that the sergeant believed Heare was guilty or that he arrested the right person. See Bartlett v. State, 993 So. 2d 157, 166 (Fla. 1st DCA 2008) (holding that it was error to allow the detective to testify that he had ruled out the possibility that the defendant had acted in self-defense).

Finally, we are not persuaded by the State's argument that any error in this case was harmless. Self-defense was Heare's sole defense to the battery charge, and Heare had to abandon that defense when the court refused to instruct the jury on it. Not only was the jury not given the option of finding that Heare acted in self-defense, they were told in two different ways that the investigating officer believed Heare was guilty of the battery. The State has not proven that there is no reasonable possibility that these errors did not contribute to the verdict. See State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986).

Reversed and remanded.


CASANUEVA and BADALAMENTI, JJ., Concur.