# Third District Court of Appeal

## State of Florida

Opinion filed June 25, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-2155
Lower Tribunal No. F21-16663
_____


**Davonte Barnes,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Marisa Tinkler Mendez, Judge.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Sandra Lipman, Senior Assistant Attorney General, for appellee.


Before EMAS, LINDSEY, and LOBREE, JJ.

LINDSEY, J.

Appellant Davonte Barnes timely appeals his twenty-three felony convictions and life sentences. Finding no error, we affirm. We write to discuss two issues Barnes raises on appeal: the trial court's rejection of the "Independent Act" jury instruction and its admission of the rap video "Mr. Pull Up" into evidence.[1]

## I.     BACKGROUND

This case is related to a mass shooting at the El Mula Banquet Hall on May 30, 2021. Three people died and twenty were injured. The State charged numerous alleged coconspirators in that shooting with homicide, attempt, and conspiracy offenses, alleging that a group led by the rapper Young Savage conspired to attack a rival crew centered on the rapper Foe Pack at El Mula.

Barnes was charged with three counts of First-Degree Murder, twenty counts of Attempted First-Degree Murder, and one count of Conspiracy to Commit First-Degree Murder. The State argued at trial that Barnes was a principal to these offenses as the lookout sent to "peep" the scene and make sure Foe Pack and his crew were at El Mula so that Barnes's associates could shoot them. Barnes's counsel argued that he was not closely affiliated with the other codefendants and did not have knowledge of their intent to shoot anybody.

---

[1] We affirm all other issues without elaboration.

The trial court admitted into evidence an interview of Barnes by law enforcement. In the interview, Barnes originally told investigators that he was invited to El Mula by a woman named Nichie to see "one of her artists" perform. Ultimately, he confessed that he knew Young Savage was planning to "hit up" El Mula, that he was "supposed to peep the scene and leave," that he understood Young Savage and company intended to shoot people, but that he did not think they would go through with it because there were too many people present.

Throughout the trial, the parties and court repeatedly discussed whether two music videos would be admitted into evidence. Young Savage made both videos, which feature Barnes dancing alongside him and several codefendants waving around guns and money. The videos arguably describe the feud between Young Savage and Foe Pack. One is titled "Pull Up" and predated the shooting by 13 months; the other is titled "Mr. Pull Up" and was released one month after the shooting. The trial court ultimately excluded "Pull Up" but admitted "Mr. Pull Up." The State played "Mr. Pull Up" for the jury during Detective Alexandra Turnes's testimony and had her explain the slang in the lyrics. The State played and discussed the video again during its rebuttal argument.

Barnes requested Standard Jury Instruction 3.6(l), "Independent Act." The trial judge rejected this instruction after hearing argument of counsel.

3

The jury ultimately convicted Barnes on lesser-included offenses of Second-Degree Murder (three counts) and Attempted Second-Degree Murder (twenty counts), but acquitted him on the conspiracy count, which had no lesser-included offenses.  Barnes timely appealed.

## II.    ANALYSIS

Barnes argues on appeal that the trial court erred in admitting the video "Mr. Pull Up" because its probative value was outweighed by the danger of unfair prejudice.[2]  See § 90.403, Fla. Stat. (2024).  He also argues that the trial court erred in failing to give the requested "Independent Act" jury instruction.  We discuss each in turn.

### a. Admission of Video

A trial court's admission of evidence is reviewed for abuse of discretion.  E.g., White v. State, 817 So. 2d 799, 806 (Fla. 2002).  Barnes argues that the video should have been excluded under § 90.403: "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."  We disagree.

The main concern with the admission of rap videos in criminal trials is that if they appear to promote a violent or criminal lifestyle in general without

---

[2] We decline to opine on any hearsay or confrontation issues as none were raised in the parties' briefs.  See Bainter v. League of Women Voters of Fla., 150 So. 3d 1115, 1126 (Fla. 2014).

being sufficiently probative of the crimes charged, they can potentially inflame a jury's sympathies against a defendant depicted in the video rather than keeping the jury's focus on whether the evidence at trial has proven each element of those crimes beyond a reasonable doubt. Compare United States v. Gamory, 635 F.3d 480, 493 (11th Cir. 2011) (holding that the admission of a rap video was error, but harmless, in prosecution for offenses related to drug conspiracy and money laundering where lyrics presented a substantial danger of unfair prejudice because they contained violence, profanity, sex, promiscuity, and misogyny and could reasonably be understood as promoting a violent and unlawful lifestyle and the video was not clearly probative of the defendant's guilt), with United States v. Sims, 11 F.4th 315, 323 (5th Cir. 2021) (upholding admission of two rap videos because "explicit rap videos are probative and outweigh substantial prejudice when the defendant performs the song, describes events closely related to the crime charged, and the evidence is not cumulative").

But generally, in Florida, rap videos are admissible when they describe events close to the crime charged, contradict the defendant's statements or defense, or otherwise help to explain the factual context of a charged crime and/or motives that drove it. See Wright v. State, 199 So. 3d 1019, 1021 (Fla. 4th DCA 2016) ("[W]e find no error in the trial court's admission of the rap videos created by the defendant as they were relevant to the commission

of the crime."); <u>Hayes v. State</u>, 338 So. 3d 1123, 1131 (Fla. 1st DCA 2022) ("The trial court did not err in admitting this evidence. . . . The January 29 shooting was a continuation and consequence of preceding events, which were violent and retaliatory. These rap exchanges . . . . are central to this case and indispensable to explaining the January 29 shooting."); <u>United States v. Belfast</u>, 611 F.3d 783, 820 (11th Cir. 2010) (holding that the probative value of rap lyrics was not outweighed by unfair prejudice because they provided evidence of defendant's association with the armed group ATU and contradicted his statements that he was not aware of the group's violent and criminal acts).

As in <u>Hayes</u>, the shooting central to this case "was a continuation and consequence of preceding events, which were violent and retaliatory[,]" 338 So. 3d at 1131, and the video helps to explain why Barnes would agree to "peep" on Foe Pack and inform Young Savage of his whereabouts. It further sheds light on Barnes's knowledge of the conflict's nature and history, refuting his trial defense that he did not know that Young Savage's intent towards Foe Pack was violent nor intend to play a role in any such violence. In the same way that flight from the scene of a crime can be probative of a defendant's guilt, participation in a video celebrating a shooting is probative of Barnes's motives for acting as lookout, his level of awareness of the

6

intentions of his codefendants, and the truth or falsity of his statements to police denying such motives and awareness.

This case is also like <u>Belfast</u>, in which the defendant disputed his level of control of the armed group ATU and argued he was not aware of their violent and criminal acts. 611 F.3d at 820. His rap video was properly admitted as evidence that he was in fact associated with ATU and fully aware of their violent and criminal acts. <u>Id.</u> Here, Barnes's trial defense was that he was not sufficiently associated with Young Savage and his entourage to be aware of the violent and criminal nature of their designs. The video "Mr. Pull Up" tended to disprove Barnes's trial defense by showing that he was aware of the violent and criminal nature of Young Savage's designs. Thus, we find no abuse of discretion in the trial court's admission of the video.[3]

### b. Independent Act Instruction

Barnes argues the trial court erred in refusing to give the "Independent Act" instruction to the jury. We disagree. The Independent Act doctrine applies when "after participating in a common plan or design to commit a crime, one of the [codefendants] embarks on acts not contemplated by the

---

[3] Even if it was error to admit the video, the error is harmless beyond a reasonable doubt because the jury was presented with overwhelming evidence of Barnes's guilt in the form of his recorded confession that he knew Young Savage was planning to "hit up" El Mula, understood Young Savage and company intended to shoot people, and visited El Mula that day pursuant to an instruction "to peep the scene and leave."

other defendants or participants in the crime, and commits additional criminal acts beyond the scope of the original collaboration." Gary v. State, 330 So. 3d 118, 120 (Fla. 2d DCA 2021) (alteration in original) (quoting Barfield v. State, 762 So. 2d 564, 566 (Fla. 5th DCA 2000)). While a trial court's refusal to give a requested jury instruction is reviewed for abuse of discretion, this discretion is limited in criminal cases because the "defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support this theory, and so long as the theory is recognized as valid under the law of the state." Id. (quoting Williams v. State, 34 So. 3d 768, 770-71 (Fla. 2d DCA 2010)).

Here, there is no evidence in the record suggesting that Barnes planned with anyone to commit a lesser crime, such as a drug purchase or solicitation of prostitution, that got away from him when another participant embarked on an act not contemplated by the plan. The evidence admits of two interpretations: either Barnes knowingly acted as lookout for Young Savage's plan to shoot people (the State's contention), or he unwittingly acted as lookout without knowing or intending that any crime would happen (Barnes's defense). Neither scenario fits the Independent Act doctrine. Thus, the trial court did not err in refusing this instruction.

Affirmed.